Terry HAYES, Individually and d/b/a Terry's Towing
*v.* ADVANCED TOWING SERVICES, INC., and
Robert N. Jeffries

CA 00-654                                        40 S.W.3d 800

Court of Appeals of Arkansas
Division I
Opinion delivered March 7, 2001

*Carol Gillespie*, for appellant.

*Pearson Law Firm*, by: *Ralph C. Epperson*, for appellees.

JOSEPHINE LINKER HART, Judge. Terry Hayes appeals a directed verdict that dismissed his tortious interference claim against appellees.[1] Appellant argues that when viewing the evidence in a light most favorable to him, substantial evidence existed that tended to establish his claim against appellees, and, therefore, the directed verdict was inappropriate. We agree with appellant and reverse and remand.

Both parties operated competing towing companies in the same town. At the time of the trial, appellant had worked in the area for approximately fifteen years, while appellees had worked in the area for only two and one-half years. After losing a series of business accounts, appellant sued appellees alleging, *inter alia*, tortious interference. In response, appellees denied appellant's averments and counterclaimed, alleging that appellant had tortiously converted items of personal property.

According to the testimony elicited from several witnesses during appellant's case-in-chief, when appellees began operations, Robert "Nick" Jeffries, the principal owner of Advanced Towing Services, Inc., began an unusual campaign to strip business away from appellant by telling appellant's customers that appellant had a criminal record. Appellant did not deny his past, but, of course, he did not volunteer that information. Numerous employees from various companies and a local university transit department, who were or had been appellant's customers, testified that Jeffries had told them that appellant had such a record. Despite a general consensus among the witnesses that appellant did a good job and that

---

[1] The trial court, in fact, dismissed several counts of appellant's complaint – tortious infliction of emotional distress and defamation (as against separate defendant Jeffries). However, we address only appellant's tortious interference claim inasmuch as it is the only cause of action addressed by appellant on appeal.

no complaints were made against him during the lengthy period that he worked for them, there was testimony that appellant suffered business losses as a result of appellees' conduct.

Following appellant's case-in-chief, appellees' directed-verdict motion on appellant's claim of tortious interference was granted. The trial court reasoned that appellant failed to demonstrate that Jeffries's conduct (*i.e*, making truthful statements regarding appellant's criminal history) was improper.[2] Thereafter, a judgment was entered awarding Advanced Towing Services, Inc., $23.50 and costs on its counterclaim commensurate with the jury's special verdict. Appellant seeks reversal of this directed verdict.

■ "In reviewing an order granting a motion for directed verdict, this court views the evidence in the light most favorable to the party against whom the verdict was directed. . . . [and if] any substantial evidence exists that tends to establish an issue in favor of that party, it is error for the trial court to grant the motion for directed verdict." *Sexton Law Firm, P.A. v. Milligan*, 329 Ark. 285, 297, 948 S.W.2d 388, 394 (1997) (citations omitted). Appellant argues that the trial court erred by determining that he could not prevail as a matter of law merely because the statements Jeffries made were truthful and, therefore, could not be considered improper.

■ ■ Our supreme court addressed the claim of tortious interference in *Mason v. Wal-Mart Stores, Inc.*, 333 Ark. 3, 13, 969 S.W.2d 160, 165 (1998), and in doing so adopted the *Restatement (Second) of Torts* § 766 (1979), which provides:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Consistent with the instructions found in commentary to section 766 and to obtain a better understanding of the term "improperly,"

---

[2] The trial judge stated, "the law requires that unlawful or untrue statement to harm a competitor – the evidence before the Court, as admitted by Mr. Hayes that he was, indeed, a convicted felon, and we have a free speech in this country, so therefore, I've ruled that that's not sufficient evidence to allow that issue to go to the jury."

the court referred to *Restatement (Second) of Torts* § 767 (1979), which states:

> In determining whether an actor's conduct in intentionally inter-fering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:
>
> (a)   the nature of the actor's conduct,
>
> (b)   the actor's motive,
>
> (c)   the interests of the other with which the actor's conduct interferes,
>
> (d)   the interests sought to be advanced by the actor,
>
> (e)   the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
>
> (f)   the proximity or remoteness of the actor's conduct to the interference and
>
> (g)   the relations between the parties.

*See Mason*, 333 Ark. at 14, 969 S.W.2d at 165. We now discuss in sequence these factors as they relate to the facts of this case.

### *The nature of appellees' conduct*

According to the drafters of *Restatement (Second) of Torts* § 767 cmt. c (1979):

> Under the same circumstances interference by some means is not improper while interference by other means is improper; and, likewise, the same means may be permissible under some circum-stances while wrongful in others. The issues is not simply whether the actor is justified in causing the harm, but rather whether he is justified in causing it in the *manner* in which he does cause it.

(Emphasis added.) Here, several university employees testified that Jeffries not only told them of appellant's criminal history but screamed threats[3] and approached at least one employee at a restaurant, challenging the university's use of appellant's towing service.

### Appellees' motives

"In determining whether the interference is improper, it may become very important to ascertain whether the actor was motivated, in whole or in part, by a desire to interfere with the other's contractual relations [and if] this was the sole motive the interference is almost certain to be held improper." *Restatement (Second) of Torts* § 767 cmt. d (1979). In this case, at least one witness testified that she believed that Jeffries's purpose in telling her about appellant's criminal history was to induce her employer, the owner of a taxi cab company, to terminate their business relationship with appellant and use appellees' services. In fact, appellees offered free towing services to the company if it would not use appellant's services.

### Interests of the other with which appellees' conduct interferes

The drafters state in *Restatement (Second) of Torts* § 767 cmt. e (1979), that:

> Some contractual interests receive greater protection than others. Thus, depending upon the relative significance of the other factors, the actor's conduct in interfering with the other's prospective contractual relations with a third party may be held to be not improper, although his interference would be improper if it involved persuading the third party to commit a breach of an existing contract with the other.

Evidence was presented in appellant's case-in-chief that appellant had existing and long-standing relationships with several entities, including the university and a local apartment complex. These relationships, however, were apparently not memorialized in a formal written contract.

---

[3] According to the testimony of one university employee, Jeffries threatened to go to the university's chancellor unless appellant was removed from the university's rotation list.

*The interests sought to be advanced by appellees*

On this factor, the drafters state:

> Usually the actor's interest will be economic, seeking to acquire business for himself. An interest of this type is important and will normally prevail over a similar interest of the other if the actor does not use wrongful means. If the interest of the other has been already consolidated into the binding legal obligation of a contract, however, that interest will normally outweigh the actor's own interest in taking that established right from him.

*Restatement (Second) of Torts* § 767 cmt. f (1979). As previously stated, appellant offered evidence that an established business relationship existed between him and several entities when appellees began informing those entities of appellant's past criminal record.

*The social interest in protecting*
*the freedom of action of appellees and*
*the contractual interests of the other*

The drafters recognized the need to avoid identifying reasonable competition as improper and, therefore, provided:

> [I]t is thought that the social interest in competition would be unduly prejudiced if one were to be prohibited from in any manner persuading a competitor's prospective customers not to deal with him. On the other hand, both social and private interests concur in the determination that persuasion only by suitable means is permissible, that predatory means like violence and fraud are neither necessary nor desirable incidents of competition.

*Restatement (Second) of Torts* § 767 cmt. g (1979). Generally speaking, one business can solicit business from a competitor's client; however, there are limits, and this restatement attempts to establish such limits. Although no evidence was offered suggesting that appellees committed either fraud or violent acts, there was evidence that Jeffries made threats to at least one of appellant's clients and demanded that the client stop using appellant's service.

### Proximity or remoteness of appellees' conduct to the interference

One who induces a third person not to perform his contract with another interferes directly with the other's contractual relations. The interference is an immediate consequence of the conduct, and the other factors need not play as important a role in the determination that the actor's interference was improper. The actor's conduct need not be predatory or independently tortious, for example, and mere knowledge that this consequence is substantially certain to result may be sufficient.

*Restatement (Second) of Torts* § 767 cmt. h (1979). Here, there was evidence that established close proximity between appellees' conduct and the interference.

### Relations between the parties

"A and B may be competitors, and A's conduct in inducing C not to deal with B may be proper, though it would have been improper if he had not been a competitor." *Restatement (Second) of Torts* § 767 cmt. i (1979). Of course, the parties here were business competitors.

If we view the evidence in a light most favorable to appellant in this case, then some factors favor each party. For example, the manner in which appellees caused harm to appellant triggers consideration of the first factor. Jeffries did not merely share information with others; rather, he made threats in order to persuade others to act based on that information and forced them to consider this information outside the traditional places and times of work. Likewise, one could find that appellees' threats demonstrated that their motive was to directly interfere with appellant's existing business relationships, which are entitled to greater protection because such relationships affect others. On the other hand, because appellees' conduct was not fraudulent and the parties were competitors, these facts could constitute a type of business competition that, as a general rule, the law should avoid hindering.

■ Because the. foregoing factors do not lead to an obvious conclusion, it is necessary to offer a generalized rule to aid in defining the term "improper"[4] — "[T]he real question is whether the actor's conduct was fair and reasonable under the circumstances." *Restatement (Second) of Torts* § 767 cmt. j (1979). In our view, however, reasonable people could differ as to whether appellees' conduct was fair and reasonable under the circumstances. After all, appellees' conduct does not fit within the traditional concepts of business inasmuch as it may have caused business decisions to be based on factors other than economics or quality of service.[5]

Moreover, although a truthful statement may be less likely to be considered improper, we are not disposed to create a *per se* rule that under all circumstances an actor is justified in interfering with either a contractual relationship or a business expectancy so long as the interference is in the nature of a truthful statement. The law does not provide that knowledge about a particular fact concerning an individual carries with it a corresponding right to reveal that fact under all circumstances without any exposure to potential civil liability. To focus on the truthfulness of a statement and ignore other facets of an actor's conduct and motives would plainly be contrary to the law as expressed in the restatements.

■ ■ Nevertheless, our task on review is not to establish whether in fact appellees' conduct was improper; instead, we merely must determine whether the claim disposed of as a matter of law should have been resolved by the finder of fact. In this respect, we defer to the drafters, who express the opinion that "when there is room for different views, the determination of whether the interference was improper or not is ordinarily left to the jury, to obtain its common feel for the state of community mores and for the

---

[4] *See* Odette Woods, Note, *Tort Law — Tortious Interference with Contract: The Arkansas Supreme Court Clarifies Who has the Burden and What They Have to Prove.* Mason v. Wal-Mart Stores, Inc., *333 Ark. 3, 969 S.W.2d 160 (1998),* 21 U. ARK. LITTLE ROCK L. REV. 563, 575 (1999) ("One potential problem with the use of the term 'improper' lies with the vagueness of its definition.").

[5] This stands in stark contrast with the facts of *Mason,* in which Wal-Mart simply contacted vendors, offering to deal with them instead of an intermediary for mutual benefit. *See Mason,* 333 Ark. at 5, 969 S.W.2d at 160-161. Although this move interfered with the intermediary's business, Wal-Mart's conduct was not improper because, in part, by its very nature it was consistent with traditional concepts of business inasmuch as it was motivated by a desire to create a more accurate, efficient, and, by implication, economical means of communication between the parties to the agreement. Appellees' conduct, arguably, lacks such similar motivation.

manner in which they would operate upon the facts in questions." *Restatement (Second) of Torts* § 767 cmt. j (1979).

Reversed and remanded.

VAUGHT, J., agrees.

PITTMAN, J., concurs.