# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 01-1994

_____

| | | |
|---|---|---|
| Lawrence L. Mathis, an individual, | * | |
| Doing Business as | * | |
| Lawrence L. Mathis Consulting, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Western |
| Ching Liu, an individual, | * | District of Arkansas. |
| Doing Business as | * | |
| Pacific Cornetta, Inc.; | * | |
| Alex Liu, an individual, | * | |
| Doing Business as | * | |
| Pacific Cornetta Inc.; | * | |
| Pacific Cornetta Inc., | * | |
| an Oregon Corporation; | * | |
| Pacific Smart Enterprises, LTD., | * | |
| a foreign corporation, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: November 15, 2001

Filed:  January 17, 2002 CORRECTED 1/28/02

_____

Before BOWMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
     NANGLE, District Judge.[1]

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

After Pacific Cornetta terminated its contract with Lawrence Mathis and hired his sub-agent in his place, Mr. Mathis sued the company and its officers for breach of contract and for tortious interference with a contractual relationship. The trial court[2] submitted the case to the jury without instructing it on punitive damages. After the jury awarded Mr. Mathis compensatory damages on both claims, the trial court granted Pacific Cornetta's motion for judgment as a matter of law on the tortious interference claim. Mr. Mathis appealed the trial court's decision to grant judgment as a matter of law as well as its refusal to submit the issue of punitive damages to the jury. We affirm the trial court's judgment in all respects.

I.

In 1997, Mr. Mathis entered into a contract with Pacific Cornetta under which he undertook to solicit orders for Pacific Cornetta's products from Kmart Corporation and other retailers in return for a five-percent commission. This contract was terminable at will by either party. The next year Mr. Mathis entered into a one-year contract with John Evans under which Mr. Evans agreed to serve as his sub-agent and to solicit orders from Kmart for the various products that Mr. Mathis handled, including those of Pacific Cornetta and Ingenious Designs, in return for a commission of one percent on net sales. This agreement specified that either party could terminate it only on written notice of six months.

_____

[1]The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

[2]The Honorable Jimm Larry Hendren, Chief United States District Judge for the Western District of Arkansas.

A few months after Mr. Mathis's arrangement with Mr. Evans commenced, Pacific Cornetta began to criticize Mr. Mathis to Mr. Evans and initiated efforts to persuade Mr. Evans to break his contract with Mr. Mathis. Mr. Evans ultimately entered into a contract with Pacific Cornetta to act as its sales representative to Kmart, and the following day Mr. Evans terminated his contract with Mr. Mathis without having given him the required notice. Two days later still, Pacific Cornetta terminated its contract with Mr. Mathis. Mr. Mathis then filed this action against Pacific Cornetta.

## II.

Under Arkansas law, a defendant is liable for tortious interference only if the defendant's interference with some relevant advantage was "improper." *Mason v. Wal-Mart Stores, Inc.*, 333 Ark. 3, 969 S.W.2d 160, 165 (1998). Arkansas courts look to considerations like those laid out in the *Restatement (Second) of Torts* § 767 (1979) to determine whether a defendant's interference is improper. *See Mason*, 969 S.W.2d at 165. These considerations include the " 'nature of the actor's conduct ... the actor's motive ... the interests of the other with which the actor's conduct interferes ... the interests sought to be advanced by the actor ... the social interests in protecting the freedom of action of the actor and the contractual interests of the other ... the proximity or remoteness of the actor's conduct to the interference and ... the relations between the parties.' " *Id.* at 164 (quoting *Restatement (Second) of Torts* § 767 (1979)).

We conclude that Mr. Mathis made out a submissible case on this element of his claim. If Mr. Evans's agency arrangement with Mr. Mathis had been purely at-will, we do not believe that Pacific Cornetta's successful effort to hire Mr. Evans away would have risen to the level of impropriety necessary to make out a case for tortious interference. That is because a party's interference with an at-will contract is "primarily an interference with the future relation between the parties," and when an at-will contract is terminated there is no breach of it. *Restatement (Second) of*

*Torts* § 768 cmt. i (1979). In such circumstances, the interfering party is free for its "own competitive advantage, to obtain the future benefits for [itself] by causing the termination," provided it uses suitable means. *Id*.

Mr. Evans's contract with Mr. Mathis, however, did not create a simple at-will arrangement because Mr. Evans could terminate it only after giving Mr. Mathis six months' notice of his intention to do so. In these circumstances, we think that the jury was entitled to conclude that Pacific Cornetta's blandishments were improper, especially since inducing a breach of contract absent compelling justification is, in and of itself, improper. *See Restatement (Second) of Torts* § 767 cmt. e (1979); *Restatement (Second) of Torts* § 768 cmt. h (1979).

### III.

Under Arkansas law, a party seeking damages must present "evidence sufficient to fix damages in dollars and cents." *Mears v. National Mutual Ins. Co.*, 91 F.3d 1118, 1123 (8th Cir. 1996) (citing *Milligan v. General Oil Co.*, 293 Ark. 401, 738 S.W. 2d 404, 406 (1987)). When a party is claiming damages for the loss of anticipatory profits, it " 'must present a reasonably complete set of figures, and not leave the jury to speculate as to whether there could have been any profits.' " *Jim Halsey Co. v. Bonar*, 284 Ark. 461, 683 S.W. 2d 898, 903 (1985) (quoting *Sumlin v. Woodson*, 211 Ark. 214, 199 S.W.2d 936, 939 (1947)).

Mr. Mathis asked for damages for the loss of anticipatory profits on his tortious interference claim. He argues that the damages that the jury awarded were supported by Mr. Evans's sales of Ingenious Design products and Pacific Cornetta products to Kmart.

We agree, first of all, with the trial court's conclusion that Mr. Evans's sales of Ingenious Design products to Kmart did not give rise to a measurable loss to Mr. Mathis. The present record will not support a conclusion that the commission

that Mr. Mathis would have received from the Ingenious Design sales would have exceeded the one-percent commission that he would have owed to Mr. Evans: Mr. Evans testified that the Ingenious Design commission might have been less than that, and there was no evidence to the contrary. While it is clear that Mr. Mathis would have received some revenue from the Ingenious Design sale had Mr. Evans not terminated his contract with him, it is not clear from the record that he would have realized a net gain on those sales or, if so, what that net gain would have been.

We turn, then, to an examination of Mr. Evans's sales of Pacific Cornetta products to Kmart. The trial court concluded that Mr. Mathis was compensated for the loss on these sales by "the jury's verdict on the breach of contract claim against Pacific Cornetta." Mr. Mathis argues, however, that a reasonable jury could have divided the sales of Pacific Cornetta products to Kmart between his breach of contract claim and his tort claim. In other words, the argument runs, the jury could have determined that unpaid commissions earned on sales that occurred before the date that Pacific Cornetta terminated its contract with Mr. Mathis supported an award for breach of contract, and that unpaid commissions on sales after that date were recoverable on the claim for tortious interference with Mr. Mathis's contractual relationship with Mr. Evans.

We reject this theory because, like the trial court, we believe that Mr. Mathis had no claim to any commissions from sales of Pacific Cornetta products that occurred after Pacific Cornetta terminated its contract with him. The jury was prohibited from considering commissions on these sales because they did not result from Mr. Evans's "failure ... to perform the contract," *Restatement (Second) Torts* § 766 (1979), *quoted in Hayes v. Advanced Towing Servs., Inc.* 73 Ark. App. 36, 40 S.W.3d 800, 802 (2001). Mr. Mathis would not have been entitled to them even if Mr. Evans had remained his sub-agent. In short, Mr. Mathis's losses on these sales were a result of Pacific Cornetta exercising its right to terminate its contract with him at will, not Pacific Cornetta's tortious interference, and the losses were therefore not

recoverable under a theory of tortious interference.  Mr. Mathis might well have had an action against Mr. Evans for breach of contract, but that issue is not before us.

Mr. Mathis relies heavily on *Benny M. Estes and Assoc. v. Time Ins. Co.*, 980 F.2d 1228 (8th Cir. 1992), but the facts in the case at bar render that case distinguishable.  In *Estes*, we upheld a jury's award of damages on a tortious interference claim, which apparently was based, in part, on money that the plaintiff would have received from his sub-agents' sales of the defendant's products had the defendant not hired the sub-agents away. *See id.* at 1230.  The jury was permitted to consider these sales because, as far we can discern, at the time the sales were made the plaintiff and defendant had an ongoing contractual relationship, specifying that the plaintiff was entitled to a commission on his sub-agent's sales of the defendant's products.  In contrast, Mr. Mathis had no contractual relationship with Pacific Cornetta after it terminated the arrangement with him, so he had no claim to a commission on sales of  Pacific Cornetta products after that date.

IV.

Arkansas law requires an award of actual damages as a predicate to the award of punitive damages.  *See Hale v. Ladd*, 308 Ark. 567, 826 S.W.2d 244, 247 (1992).  Because the trial court was justified in setting aside the jury verdict of actual damages on the tortious interference claim, there was no basis for a punitive damages award.  There was therefore no error in the trial court's refusal to submit the question of punitive damages to the jury.

V.

In sum, we believe that neither the sales of Ingenious Design Products nor the sales of Pacific Cornetta products could furnish a basis for an award of compensatory damages on Mr. Mathis's tortious interference claim.  We therefore affirm the trial court's judgment in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.