BEAM, Circuit Judge,
concurring and dissenting.
I concur in Parts I and II of the court’s opinion. But, because I believe Georgia-Pacific has presented sufficient evidence to survive summary judgment on its claim of tortious interference with a contractual relationship, I dissent from Part III.
Under Arkansas law, tortious interference with a contractual relationship has five elements: (1) existence of a valid contractual relationship; (2) defendant’s knowledge of that relationship; (3) defendant’s intentional interference inducing or causing a breach of the relationship; (4) damage to the party whose relationship has been disrupted; and (5) improper conduct by the defendant. Vowell v. Fairfield Bay Cmty. Club, Inc., 346 Ark. 270, 58 S.W.3d 324, 329 (2001). Accordingly, in order to survive summary judgment, Georgia-Pacific must have presented “sufficient probative evidence [of these five elements] permitting] a finding in [its] favor on more than mere speculation, conjecture, or *780 fantasy.” Binkley v. Entergy Operations, Inc., 602 F.3d 928, 931 (8th Cir.2010) (quotation omitted). The court asserts that it is not sure that Georgia-Pacific could establish (1) a valid contractual relationship, (2) defendant’s knowledge, or (3) defendant’s intentional interference. But, rather than rest its decision on any of those three elements, the court disposes of the claim on the fifth element, finding that Myers’s conduct was not improper. Because I would find that Georgia-Pacific has submitted sufficient evidence to create a genuine issue of material fact as to the existence of all five elements, I would reverse the district court’s grant of summary judgment on this issue.
As a preliminary matter, and as to the first element, I disagree with the court’s suggestion that “no signed sublease with the towel restriction was produced.” Ante at 9. In fact, Georgia-Pacific produced Sublease Agreements signed by both Gospel Light Baptist and Fountain Lake School. In both of the signed subleases, the parties acknowledged that the sublease was subject to “Customer’s Terms of Use.” And, Georgia-Pacific submitted the “Customer’s Terms of Use,” which states in relevant part that the sublessees were “required to use the dispensers for the sole purpose of dispensing, under [Georgia-Pacific] trademarks, only [Georgia-Pacifie’s] branded towel ... authorized for use in the dispensers and purchased from Distributor.” In my view, such evidence is sufficient to establish the existence of a valid contractual relationship.
The second and third elements of the cause of action are also established by Myers’s own admissions in the record, contrary to the court’s stated doubts. First, as to knowledge, Myers admits that it received a cease and desist letter from Georgia-Pacific dated July 1, 2008. In that letter, Georgia-Pacific told Myers that its enMotion dispensers were subject to subleases and that Myers’s selling 810— B towels to the sublessees tortiously interfered with those contracts. Such evidence is sufficient to show that Myers knew of the alleged contractual relationship. Second, as to breach, Myers admitted that it knew with 99 percent certainty that its customers were placing the 810-B towels it was selling into enMotion dispensers. Since Myers continued to sell the 810-B towels after receiving notice via the cease and desist letter, this is sufficient circumstantial evidence to indicate that Myers was intentionally selling the 810-B towels in an effort to induce the end-users to place that particular towel in enMotion dispensers in violation of the subleases. See Stewart Title Guar. Co. v. Am. Abstract & Title Co., 363 Ark. 530, 215 S.W.3d 596, 606 (2005) (noting that the element of intent is met when the defendant knew that breach “was substantially certain to be produced by his conduct”).
No one has disputed that Georgia-Pacific was damaged by Myers’s conduct. The evidence indicates that Georgia-Pacific lost sales because the end-users purchased 810-B towels instead of the enMotion towels. Accordingly, Georgia-Pacific has submitted evidence to satisfy the fourth element as well.
As to the fifth element — improper conduct by the defendant — I disagree with the court’s reasoning that this element was not met. It is accurate that “[u]nder Arkansas law, a defendant is liable for tortious interference only if the defendant’s interference with some relevant advantage was ‘improper.’ ” Mathis v. Liu, 276 F.3d 1027, 1029 (8th Cir.2002). And Arkansas courts “look to factors in § 767 of the Restatement (Second) of Torts for guidance about what is improper.” K.C. Props. of N.W. Ark., Inc. v. Lowell Inv. Partners, LLC, 373 Ark. 14, 280 S.W.3d 1, 11 (2008). In *781 its analysis of the improper interference in this case, however, the court erroneously concludes that Myers’s conduct was not, as a matter of law, improper.
Specifically, in concluding that Myers’s conduct was not improper, the court states that “while Myers knew with 99 percent certainty that its customers were putting 810-B towels in enMotion dispensers, the evidence does not show that Myers knew they were doing so in violation of a sublease.” Ante at 11. This summation of the evidence misses the mark. As I have noted, the evidence tends to show that Myers, via the cease and desist letter, knew that its customers’ placement of 810-B towels in enMotion dispensers violated a sublease. Yet, Myers continued to sell the 810-B towels despite being 99 percent certain that the sublease-prohibited towels were being so used. In my estimation, such evidence, standing alone, sufficiently suggests that Myers had improper motives and knew that it was inducing the end-users to breach the subleases. And, as we have held, under Arkansas law, “inducing a breach of contract absent compelling justification is, in and of itself, improper.” Mathis, 276 F.3d at 1030; see also Hayes v. Advanced Towing Servs., Inc., 73 Ark. App. 36, 40 S.W.3d 800, 804 (2001) (“One who induces a third person not to perform his contract with another interferes directly with the other’s contractual relations. The interference is an immediate consequence of the conduct, and the other factors need not play as important a role in the determination that the actor’s interference was improper.”).
What the court essentially contends is that Myers presented sufficient evidence to suggest that its conduct was justified. In particular, the court states that Myers (1) attempted to get Georgia-Pacific to send it signed subleases; (2) asked their customers whether they had sublease agreements with Georgia-Pacific; (3) sold 810-B towels in a mere effort to compete with Georgia-Pacific; and (4) did not actively place the 810-B towels in the dispensers. Whether this evidence constitutes a “compelling justification” for Myers’s conduct is not for us to decide today. This is because the fact remains that Myers continued to sell the 810-B towels to its customers with a 99 percent certainty that the customers were using the towels in a manner Myers knew would breach the contracts. While the facts the court highlights may lead a reasonable person to conclude that Myers’s conduct was proper behavior, this is a question for the factfinder.
In the end, whether an actor’s conduct is “improper” for the purpose of tortious interference is a question of “ ‘whether the actor’s conduct was fair and reasonable under the circumstances.’ ” Hayes, 40 S.W.3d at 805 (quoting Restatement (Second) of Torts § 767 cmt. j (1979)). Based on the evidence Georgia-Pacific has presented, reasonable people could disagree as to whether Myers’s conduct was improper. “ ‘[W]hen there is room for different views, the determination of whether the interference was improper or not is ordinarily left to the jury, to obtain its common feel for the state of community mores and for the manner in which they would operate upon the facts in question.’ ” Id. at 805 (quoting Restatement (Second) of Torts § 767 cmt. j (1979)). Accordingly, I would reverse the dismissal of the tortious interference claim and remand the issue to the district court for trial, allowing the factfinder to determine whether Myers’s conduct was improper.