2011 Ark. 94

**James DOCKERY, Appellant**

v.

**Brett MORGAN; Craig Campbell; George Dunklin, Jr.; Ronald Pierce; Rick Watkins; Ron Duncan; Emon Mahony; Dr. Frederick W. Spiegel; and Scott Henderson, Individually and in their Official Capacities as Commissioners and Director of the Arkansas Game and Fish Commission, Appellees.**

**No. 10–651.**

Supreme Court of Arkansas.

March 3, 2011.

Rehearing Denied April 14, 2011.

Perroni & Koehler, by Samuel A. Perroni and Shelly Hogan Koehler; and Nicki Nicolo, by: Nicki Nicolo, Little Rock, for appellant.

Quattlebaum, Grooms, Tull & Burrow PLLC, by: Michael N. Shannon and Joseph W. Price, II, and James F. Goodhart, Little Rock, and John P. Marks, Ark. Game & Fish Comm'n, for appellees.

COURTNEY HUDSON HENRY, Justice.

Appellant James Dockery appeals a Pulaski County Circuit Court order granting a motion to dismiss filed by appellees Brett Morgan, Craig Campbell, George Dunklin, Jr., Ronald Pierce, Rick Watkins, Ron Duncan, Emon Mahony, Dr. Frederick W. Spiegel, and Scott Henderson, individually and in their official capacities as commissioners and director of the Arkansas Game and Fish Commission (Commission). For reversal, appellant argues that the circuit court erred in dismissing counts one and two of his amended complaint, pursuant to Arkansas Rule of Civil Procedure 12(b)(6) (2010); in ruling that it lacked jurisdiction to consider count three of his amended complaint; in dismissing appellees in their individual capacities; and in denying appellant's request for an injunction pending appeal. Our jurisdiction is proper pursuant to Arkansas Supreme Court Rule 1–2(b)(4), (b)(6) (2010). We affirm.

### I. *Facts*

The parties in this appeal are appellant, a resident of Pulaski County, and appellees, the commissioners and director of the Commission. Prior to the filing of appellant's complaint, the Commission entered into gas leases with private companies to allow for mineral exploration on the Commission's land. In exchange for these leases, the private companies paid the Commission approximately $32 million. In turn, the Commission deposited the gas-lease revenue into the Game Protection Fund at the Arkansas State Treasury. Subsequently,. in Act 1147 of 2009, the Arkansas General Assembly appropriated the gas-lease revenue to the Commission.

On February 25, 2009, appellant filed his initial complaint against the Commission for declaratory and injunctive relief. Specifically, appellant alleged that the Commission's act of entering into the gas leases violated amendment 35 of the Arkansas Constitution, which charges the Commission with the duty to manage, conserve, and restore Arkansas wildlife resources. Appellant requested the circuit court to restrain and enjoin the expenditure of the gas-lease revenue until the court determined whether those funds belonged to the Arkansas State Treasury's general fund (general fund) or whether they should remain as one of the Commission's revenue bases. The Commission answered, asserting that appellant's complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state facts upon which relief could be granted. On April 3, 2009, the parties entered into a consent order whereby the Commission agreed not to expend any gas-lease revenue until the circuit court entered a final, appealable order.

On October 1, 2009, appellant filed an amended complaint, asserting three separate counts and adding appellees individually to the lawsuit. In count one, appellant alleged that appellees, acting in their official capacities as commissioners and director of the Commission, exceeded the

mandate of amendment 35 of the Arkansas Constitution by committing ultra vires acts of entering into these gas leases with private companies. Specifically, appellant alleged that (1) the Commission exceeded its mandate under amendment 35 by leasing its land for drilling purposes; (2) the Commission failed to hold certain lands in trust for the people of Arkansas by leasing land for gas drilling for profit; and (3) the Commission failed to hold lands in trust by acting outside its constitutional authority. In count two, appellant asserted an illegal-exaction claim, arguing that the Commission engaged in conduct giving rise to an illegal exaction by using public funds and resources to enter into gas leases with private, commercial enterprises and diverting the monies generated from those leases from the general fund. Finally, in an alternative count three, appellant asked the circuit court to subject the Commission's leased lands to taxation. For relief, appellant requested the circuit court to (1) declare that the Commission engaged in conduct beyond the scope of its authority under amendment 35; (2) enjoin the Commission from engaging in such conduct in the future; (3) declare that an illegal exaction arose from the misappropriation of gas-lease revenues; (4) direct reimbursement to the general fund for the illegal exaction of gas-lease revenues; (5) declare that the lands were subject to taxation and were not tax-exempt; and (6) grant appellant reasonable attorney's fees and "any and all other relief to which [appellant] may be entitled."

The Commission and appellees filed a motion to dismiss appellant's amended complaint, pursuant to Rule 12(b)(6), for failure to state a claim upon which relief could be granted. After the circuit court held a hearing on the matter, appellant presented the circuit court on December 10, 2009, with a letter and a proposed order requesting a voluntary dismissal of the Commission, pursuant to Arkansas Rule of Civil Procedure 41(a) (2010). On February 3, 2010, the circuit court granted appellant's motion for voluntary nonsuit of the Commission and dismissed the Commission without prejudice.

On March 4, 2010, the circuit court entered its order, dismissing with prejudice appellant's claims against appellees in their official capacities. First, the circuit court dismissed count one against appellees in their official capacities because appellant failed to state a claim upon which relief could be granted and because the relief could not be granted by the circuit court. The circuit court found appellant's allegations in count one were factually deficient because they were conclusory in nature. The court also ruled that appellant's allegations in count one were legally deficient pursuant to amendment 35, Arkansas Code Annotated sections 22–5–801 to –818 (Repl.2004 & Supp.2009), and the United States Fish and Wildlife Service regulations. Second, the circuit court dismissed count two against appellees in their official capacities because appellant failed to allege facts sufficient to state an illegal-exaction claim. The court ruled that appellant's allegations did not amount to illegal conduct, nor could the court grant the relief requested. Third, the circuit court dismissed count three against appellees in their official capacities based upon the circuit court's lack of jurisdiction to subject the lands to taxation. Additionally, the circuit court dismissed appellant's amended complaint against the Commission's director and commissioners in their individual capacities because state officials and employees are immune from suit, pursuant to Arkansas Code Annotated section 19–10–305(a) (Supp.2009). The court also ruled that appellant's amended complaint failed to state a claim that any actions of the Commission's director and commis-

sioners were conducted in their individual capacity, outside the scope of their official capacity, or under the color of state law to deprive appellant of his constitutional rights. On March 16, 2010, appellant filed a motion for injunction "that the funds at issue not be dissipated" pending appeal, and the circuit court denied the motion in its April 19, 2010 order. Appellant timely filed his notices of appeal on March 31, 2010, and May 17, 2010.

## II. *Points on Appeal*

■ On appeal, appellant challenges the circuit court's dismissal of appellant's claims against appellees in their official and individual capacities. Our standard of review on a motion to dismiss is well established. We treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint. *McNeil v. Weiss*, 2011 Ark. 46, 378 S.W.3d 133. In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Id.* However, our rules require fact pleading, and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. *See* Ark. R. Civ. P. 8(a)(1) (2010); *Born v. Hosto & Buchan, PLLC*, 2010 Ark. 292, 372 S.W.3d 324. We treat only the facts alleged in the complaint as true but not a plaintiff's theories, speculation, or statutory interpretation. *Hodges v. Lamora*, 337 Ark. 470, 989 S.W.2d 530 (1999). Finally, our standard of review for the granting of a motion to dismiss is whether the circuit judge abused his or her discretion. *Doe v. Weiss*, 2010 Ark. 150, 2010 WL 1253216.

■■ The circuit court dismissed appellant's official-capacity counts one and two based upon Rule 12(b)(6), which provides that "[e]very defense, in law or in fact, to a claim for relief in any pleading ... shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may ... be made by motion: ... (6) failure to state facts upon which relief can be granted[.]" According to Arkansas Rule of Civil Procedure 8(a)(1) (2010), a pleading that sets forth a claim for relief shall contain a statement in ordinary and concise language of facts showing that the pleader is entitled to relief. Rules 8(a)(1) and 12(b)(6) must be read together in testing the sufficiency of a complaint. *Rabalaias v. Barnett*, 284 Ark. 527, 683 S.W.2d 919 (1985). We look to the underlying facts supporting an alleged cause of action to determine whether the matter has been sufficiently pled. *Id.* With these general principles in mind, we turn to appellant's first argument.

### A. Count One: Factual and Legal Deficiencies

For the first point on appeal, appellant argues that the circuit court erred in ruling that count one of his amended complaint failed to state a claim upon which relief could be granted, pursuant to Rule 12(b)(6). Specifically, appellant asserts that he pled adequate facts; that the circuit court had the authority to declare that the Commission engaged in conduct beyond the scope of amendment 35 by entering into contracts with private entities to drill for gas; and that neither the Arkansas Constitution nor Arkansas statutes prohibit the circuit court from enjoining the Commission from entering into commercial contracts with private companies to drill for gas.

Appellees respond that the circuit court properly dismissed count one of appellant's amended complaint because the complaint was factually and legally deficient. Appellees contend that appellant

failed to request any actual relief and that amendment 35 of the Arkansas Constitution, Arkansas Code Annotated sections 22–5–801 to –818, and the federal fish and wildlife regulations prevent the diversion of the Commission's gas-lease monies to other state agencies.

### 1. *Factually deficient*

Appellant cites *Arkansas State Game & Fish Commission v. Stanley*, 260 Ark. 176, 538 S.W.2d 533 (1976), for the proposition that his allegations were sufficient to state a claim, particularly that the Commission's actions were "arbitrary, capricious, unreasonable, and unlawful." In *Stanley*, we reviewed an injunction that had been issued to prevent the ⌊8Commission from harvesting timber at the Bayou Meto Wildlife Management Area. Appellees, who consisted of citizens, taxpayers, and hunters, filed a class action to enjoin the Commission, its members, and its director, as well as the timber contractor, from cutting and removing timber under the contract. Appellees alleged that, if the contract were performed, the area involved would be destroyed as a wildlife and waterfowl habitat and contended that the Commission's proposed action of entering into the timber-cutting contract was ultra vires, arbitrary, capricious, unreasonable, and unlawful. The chancellor agreed with appellees and enjoined appellants from carrying out the particular timber-cutting operation. We disagreed and reversed on the basis that the contract was within the power and discretion of the Commission. *Id.*

However, *Stanley, supra,* is distinguishable from the case at bar because *Stanley* had a different procedural posture. In that case, the circuit court entered an order enjoining appellants from carrying out the particular timber-cutting operation, and appellants appealed from that decree. More significantly, the circuit court not only reviewed the complaint and the contract, but it also heard numerous expert witnesses and lay witnesses who testified about the potential impact that cutting timber could have on wildlife, animal habitat, and hunting in the area. In reversing the circuit court, we reasoned that the Commission's contracts were "policy matters vested entirely in the Commission," as long as it acted within the purview of amendment 35. *Id.* at 190, 538 S.W.2d at 540.

■ In the present case, appellant's amended complaint cannot survive a Rule 12(b)(6) motion. Appellant made the following allegation in count one of his amended complaint:

⌊9 17. ... Dockery reasonably believes, and therefore alleges, that the drilling of gas will destroy land as a wildlife habitat. Our environment and natural resources are very fragile and very valuable commodities. When entering into the lease agreements, the [Commission] did not sufficiently consider the impact of a 'business arrangement' that allowed private entities to use lands for purposes unrelated to hunting, fishing, or the management and conservation of wildlife resources. Further, the ill effects of drilling will be irreparable and long lasting. The results of drilling are obvious: the area will be destroyed as a wildlife habitat; species will be uprooted and driven out of the environment; and trees will be cut, trampled, and destroyed. The damage done to the land and environment will most likely require reconstruction by departments within the State of Arkansas at significant expense and may become a burden on Arkansas taxpayers.

Appellant's count one is fraught with conclusory allegations. These allegations, which contain phrases such as "the area *will be* destroyed," "species *will be* uproot-

ed," "trees *will be* cut," and "the damage ... *will most likely require* reconstruction ... and *may become* a burden," merely put forth speculative theories on future acts that do not concern the present-day actions of the Commission. (Emphasis added.) Without specificity, appellant failed to allege how the commissioners' and director's actions of leasing mineral rights to private companies constituted an unlawful action or how any third-party drilling created a detrimental impact on the Commission's lands.

Further, with respect to count one, appellant requested no actual relief that could be granted. In his prayer for relief, appellant pled the following:

48. Dockery seeks an injunction pursuant to Ark. R. Civ. P. 65 to enjoin and restrain the [Commission] from diverting and using any more revenue from the gas leases and require all such revenue be deposited to the General Fund.

. . . .

50. Dockery further seeks an order from this court directing the refund of all gas revenues impermissibly diverted from the General Fund and directing that all money subject to the consent order be returned to the General Fund. Additionally, appellant requested the court to declare that the Commission "engaged in conduct beyond the scope of its authority under Amendment 35" and to "enjoin[ ] the Commission from engaging in such conduct in the future."

However, appellant's prayer for relief lacks specificity and does not address the Commission's current leases or current drilling. Appellant's requested relief is incongruent with his claims, namely that any allegedly illegal contracts with third parties be declared void. During oral argument, appellant's counsel maintained that the general prayer for relief of "all other relief to which [appellant] may be entitled"

covered these claims, but appellant did not join the private companies in this action in an effort to rescind the leases. Therefore, the circuit court properly ruled that appellant's count one in his amended complaint did not meet our requirement of fact-based pleading.

### 2. *Legally deficient*

Next, we turn to the circuit court's rulings that, if appellant had pled sufficient facts, the requested relief that all revenues from these leases be diverted "to the general coffers of the State of Arkansas" was legally deficient. Specifically, we address the circuit court's rulings that amendment 35, Arkansas Code Annotated section 22–5–801 to –818, and federal regulations prevent the diversion of the Commission's gas-lease revenue to other state agencies.

#### a. Amendment 35

Amendment 35, adopted in 1944, created the Arkansas Game and Fish Commission as an independent constitutional agency with the clear power to control, manage, restore, conserve, and regulate the birds, fish, game, and wildlife resources of the state. Ark. Const. amend. 35, § 1; *Chaffin v. Ark. Game & Fish Comm'n*, 296 Ark. 431, 757 S.W.2d 950 (1988). Further, section 8 of amendment 35 grants the Commission the authority to expend its funds. Section 8 provides:

The fees, monies, or funds arising from all sources by the operation and transaction of the said Commission and from the application and administration of the laws and regulations pertaining to birds, game, fish, and wildlife resources of the State and the sale of property used for said purposes shall be expended by the Commission for the control, management, restoration, conservation, and regulation of the birds, fish, and wildlife resources of the State, including the

purchases or other acquisitions of property for said purposes and for the administration of the laws pertaining thereto and for no other purposes.

Ark. Const. amend. 35, § 8.

In *W.R. Wrape Stave Co. v. Arkansas State Game & Fish Commission*, 215 Ark. 229, 219 S.W.2d 948 (1949), we stated that the underlying purpose of amendment 35 was to vest in the Commission the power to control, manage, restore, conserve, and regulate the State's bird, fish, game, and wildlife resources, and that funds arising from all sources were to be spent by the Commission for the purposes mentioned. Section 8 of amendment 35 contains this additional language: "All monies shall be deposited in the Game Protection Fund with the State Treasurer and such monies as are necessary, including an emergency fund, shall be appropriated by the Legislature at each Legislative session for the use of the Game and Fish Commission as hereto set forth." We stated in *Wrape Stave* that "money received from sources mentioned in the Amendment is not available—even with legislative approval—for any uses other than those expressed or necessarily implied." *Id.* at 234, 219 S.W.2d at 950; see also *Ark. Game & Fish Comm'n v. Edgmon*, 218 Ark. 207, 235 S.W.2d 554 (1951) (holding that the General Assembly cannot disburse the Commission's funds but should make appropriations to the Commission).

■ The Commission's actions of entering into these gas leases falls within the ambit of amendment 35. The money derived from these gas leases qualifies as "fees, monies or funds arising from all sources by operation and transaction of the ... Commission" that can be used by the Commission for "no other purposes." This language undermines appellant's contention that the funds should be redirected to the general fund. For these reasons, we affirm the circuit court's ruling concerning amendment 35.

b. Sections 22–5–801 to –818

Contrary to appellant's assertions, our General Assembly has enacted statutes that govern the Commission's authority to issue leases for mineral rights and to retain funds received from those mineral leases. Arkansas Code Annotated section 22–5–802(c) (Supp.2009) provides that

[t]he commission shall retain control over the awarding and shall retain the authority over the issuance of leases for the mineral rights and of permits for the rights to produce and sever minerals from lands held in its name or managed by it.

Arkansas Code Annotated section 22–5–804(e) (Repl.2004) provides that the Commission has the authority to (1) establish a schedule of minimum fees and royalties for leases for the Commission's lands; (2) take bids on and to award the leases; (3) set the length of time for leases or permits to expire; and (4) set the minimum fees and royalties for leases and permits and to ensure that severance taxes on minerals from such leases or permits are paid to the proper agencies.

With regard to the funds supplied by these leases, Arkansas Code Annotated section 22–5–809(c)(4) (Supp.2009) provides that "[a]ll funds received by the Arkansas State Game and Fish Commission as fees, compensation, or royalties, including any application or bid fees, for leases or permits issued for the taking of any minerals for lands held in the name of the commission shall be special revenues and shall be deposited in the State Treasury and credited to the Game Protection Fund for the use of the commission." Ark.Code Ann. § 22–5–809(c)(4). Additionally, Arkansas Code Annotated section 22–5–812(c) (Repl. 2004) states that "[t]he Arkansas Game

and Fish Commission shall promulgate rules and regulations necessary to lease mineral rights and to issue permits to produce and sever minerals on commission lands[.]"

■ In the present case, appellant's request for a diversion of funds is prohibited by our statutes. A review of the plain language of these statutes reveals that the General Assembly not only contemplated but also authorized the Commission to enter into the gas leases to carry out its constitutional mandate. Here, these statutes specifically allow the Commission to enter into mineral leases and dictate that any funds from those leases must be used solely by the Commission. Thus, we conclude that the circuit court properly noted that these statutes codified the requirements set forth in amendment 35 regarding the Commission's funds and ruled that the statutes contradict appellant's allegations and requested remedy. For these reasons, we cannot say that the circuit court erred in dismissing on this basis.

### c. Federal regulations

Lastly, appellant's request for a diversion of funds is prohibited by federal fish and wildlife regulations. Pursuant to the United States Fish and Wildlife Service regulations, "[r]evenues from license fees paid by hunters and fishermen *shall not be diverted* to purposes ꟷᵢ₄other than the administration of the State fish and wildlife agency." 50 C.F.R. § 80.4 (2010) (emphasis added). The license revenues that may not be diverted "include income from … [the] [s]ale, lease, rental, or other granting of rights of real … property acquired or produced with license revenues." 50 C.F.R. § 80.4(a)(2). If a diversion of license revenues occurs, the state fish and wildlife agency is ineligible to receive certain federal financial-assistance funds. *See* 50 C.F.R. § 80.4(d).

■ The pertinent federal regulations are straightforward. If the gas-lease revenue is directed to the general fund, then the Commission will become ineligible for federal funding. Based upon the language of these federal regulations, these gas-lease funds are tantamount to license revenues controlled by the Commission. We hold that the circuit court did not abuse its discretion in finding that the requested relief is prohibited by the federal regulations. For these reasons, we affirm the circuit court's dismissal on these grounds.

### B. Count Two: Illegal Exaction

For the second point on appeal, appellant argues that the circuit court erred in ruling that count two of his amended complaint failed to state a claim for an illegal exaction. Specifically, appellant argues that the following allegations constituted an illegal-exaction claim that (1) the Commission is funded through a one-eighth (1/8) cent sales tax, which directs nearly $26 million to the Commission, as well as through the sale of hunting and fishing licenses; (2) the Commission has entered into lease agreements with private commercial entities for the purpose of drilling for gas; and (3) the Commission used public funds to enter ꟷᵢ₅into gas leases with private commercial enterprises and diverted the monies generated from those leases to unauthorized expenditures.

Appellees respond that appellant's count two fails to state a claim for an illegal exaction because no tax is at issue. Specifically, appellees contend that the revenue did not arise from taxation but rather from gas-lease money that private, third-party gas companies paid to the Commission for leases on the Commission's land.

■ Article 16, section 13 of the Arkansas Constitution grants the citizens of Arkansas standing to pursue an illegal-

exaction claim. This section provides that "[a]ny citizen of any county, city, or town may institute suit on behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions." An illegal exaction is defined as any exaction that either is not authorized by law or is contrary to law. *Robinson v. Villines*, 2009 Ark. 632, 362 S.W.3d 870. There are two types of illegal-exaction cases: (1) "public funds" cases, where the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent and (2) "illegal-tax" cases, where the plaintiff asserts that the tax itself is illegal. *Id.* It is axiomatic that, before a public-funds type of illegal exaction will be allowed to proceed, there must be facts showing that monies generated from tax dollars or arising from taxation are being misapplied or illegally spent. *Brewer v. Carter*, 365 Ark. 531, 231 S.W.3d 707 (2006).

■ Appellant's claim does not fall into either type of illegal-exaction case. First, with regard to illegal-tax claims, the monies at issue do not arise from taxation but are generated from the Commission's gas leases with private, third-party companies. Second, with regard to public-funds claims, the public funds at issue allegedly misapplied by the Commission were not generated from tax dollars. Here, appellant simply requested that the gas-lease revenue be moved from one part of the State's treasury to the other. Most significantly, the Commission's action of spending revenue, which is not generated from taxation, from the gas leases is not a claim contemplated by illegal exactions. *See id.*

Appellant relies upon *McGhee v. Arkansas State Board of Collection Agencies*, 360 Ark. 363, 201 S.W.3d 375 (2005), for the proposition that an allegation of the Commission's use of public funds is enough to survive a motion to dismiss for an ille-

gal-exaction claim. In *McGhee*, appellants' complaint alleged that plaintiffs were Arkansas residents and taxpayers and that appellees used public funds to finance its operation. Appellees asserted that the Board's check-cashing division was financed by fees paid by the collection agencies and check-cashers and did not receive any revenue from the Arkansas State Treasury. We held that appellants' complaint clearly alleged the use of public funds; that appellants' allegations survived a motion to dismiss; and that the circuit court erroneously dismissed the taxpayers' illegal-exaction claim for lack of standing. *Id.*

However, *McGhee* is distinguishable from the case at bar. Unlike the circumstances in *McGhee*, appellant in this case failed to plead specific facts showing that the Commission used public funds to enter into these gas leases. Appellant did not plead that the Commission expended any initial resources, namely salaries or ancillary expenses, while negotiating these gas-drilling leases, nor could appellant's counsel provide any specific examples of the Commission's expenditures in oral argument.

Further, appellant failed to request proper relief in count two. In his prayer for relief, appellant requested a publication of notice of the illegal exaction, a declaration of an illegal exaction from the misappropriation of gas-lease revenues, and a reimbursement to the general fund for the illegal exaction. However, appellant failed to request the reimbursement of these initial expenditures made by the Commission. Appellant's mere allegation that public funds were used to enter into gas leases is not enough to state a claim for an illegal exaction because the requested relief—the diversion of non-taxpayer money—cannot be granted. We hold that the circuit court did not abuse its discretion in dismissing

count two of appellant's amended complaint.

### C. Count Three: Lands Subject to Taxation

For the fourth point on appeal, appellant argues that the circuit court erred in dismissing count three of his amended complaint for lack of jurisdiction and for lack of standing. Specifically, appellant contends that he has standing to challenge the tax status of the Commission because he is a taxpayer of the state of Arkansas and holds hunting and fishing licenses.

Appellees respond that the circuit court lacked jurisdiction to decide the Commission's tax-exempt status because, contrary to appellant's assertions, appellant asked the court to subject these lands to ad valorem taxation, a task designated for the county courts. Appellees also contend that, if the circuit court had jurisdiction, appellant lacked standing because he had no property interest in lands other than Pulaski County where appellant resides.

The issue we must decide is whether the circuit court lacked jurisdiction to determine the Commission's tax-exempt status. Appellant, in count three of his amended complaint, alleged as follows:

In the event the court finds the [Commission] is not exceeding its mandate under Amendment 35 of the Constitution by entering into leases with private commercial enterprises and using profit for itself, the court should find that the leases are subject to taxation under Article 16, § 5 of the Arkansas Constitution.

The lands in question do not enjoy tax exempt status under Article 16 Section 5(b) of the Arkansas Constitution because the [Commission] is using the property to generate a profit for itself

by leasing the land to a commercial enterprise.

Article 16 Section 5(b) provides an exemption for taxation when "public property is used exclusively for public purposes."

The lands in question are managed by the [Commission]. The [Commission] is leasing these lands to commercial enterprises therefore they are subject to property tax. The lands are not being used exclusively for public purposes, but rather for private purposes by leasing them to private entities; therefore no tax exemption applies.

Dockery asks that the court subject these lands to taxation as they are not being used exclusively for public purposes.

Based upon count three, appellant requests the circuit court to "find that the leases are subject to taxation pursuant to article 16, section 5 of the Arkansas Constitution." This section provides in relevant part: "All real and tangible personal property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State." Ark. Const. art. 16, § 5. In other words, article 16, section 5 of the Arkansas Constitution refers to property taxes. With regard to property taxes, the Arkansas Constitution provides that "[t]he County Courts shall have exclusive original jurisdiction in all matters relating to county taxes." Ark. Const. art. 7, § 28; *see also Hambay v. Williams,* 373 Ark. 532, 285 S.W.3d 239 (2008); *Pockrus v. Bella Vista Prop. Owners Ass'n,* 316 Ark. 468, 872 S.W.2d 416 (1994). Here, appellant's claim that the Commission's lands should be subject to an ad valorem tax is within the exclusive jurisdiction of the county courts. *See Hambay, supra.* Therefore,

the circuit court did not err in dismissing count three of appellant's amended complaint for a lack of jurisdiction.

### D. Individual-capacity Claims

For the fifth point on appeal, appellant argues that the circuit court erred in dismissing counts one, two, and three against the Commission's director and commissioners in their individual capacities. Specifically, appellant contends that the director and commissioners are not entitled to immunity, pursuant to Arkansas Code Annotated section 19–10–305(a) (Supp. 2009), and that he was not required to allege that the acts were covered by liability insurance because he pled an illegal-exaction claim. Further, appellant argues that he properly sought damages from the commissioners and director in their individual capacities.

Appellant cites *McGhee, supra,* for the proposition that he was not required to allege facts to maintain an individual-capacity claim because he pled an illegal-exaction claim. However, in *McGhee,* we did not specifically address the issue of individual-capacity suits. Moreover, our statutes are dispositive of the issue. Section 19–10–305 provides state employees with qualified immunity from civil liability for nonmalicious acts occurring within the course of their employment. *See City of Fayetteville v. Romine,* 373 Ark. 318, 284 S.W.3d 10 (2008). Section 305(a) provides that "[o]fficers and employees of the State of Arkansas are immune from liability and from suit, except to the extent that they may be covered by liability insurance, for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment." Ark.Code Ann. § 19–10–305(a). Additionally, individual-capacity suits involve actions taken by governmental agents outside the scope of their official capacities. *Nix v. Norman,* 879 F.2d 429 (8th Cir.1989).

■ In the present case, section 19–10–305 is applicable unless appellant has pled sufficient facts to support a finding that the acts or omissions were committed maliciously. In the amended complaint, appellant failed to plead that appellees' acts were covered by liability insurance or that those acts were committed maliciously. Appellant also failed to plead that the commissioners and director acted outside the scope of their employment in leasing the Commission's land or in utilizing the revenue from those leases. Nor does appellant's amended complaint seek any relief from the commissioners and director in their individual capacities. Thus, appellant's claims against appellees in their individual capacities contain factual and legal deficiencies. For these reasons, we hold that the circuit court properly dismissed appellees with prejudice from the lawsuit in their individual capacities.

### E. Request for Injunctive Relief

For the final point on appeal, appellant argues that the circuit court erred in denying his motion for injunctive relief pending appeal. Appellant contends that he was entitled to injunctive relief because an injunction was necessary to protect the status quo and to protect the funds at issue from being dissipated before taxpayers would realize the benefit of a potentially successful appeal. Now that we have considered appellant's appeal, his final argument seeking injunctive relief is moot.

Affirmed.

BAKER, J., not participating.