Cite as 2022 Ark. 86

# SUPREME COURT OF ARKANSAS

**No.** CV-21-517

LESLIE RUTLEDGE, INDIVIDUALLY
AND AS ATTORNEY GENERAL OF
THE STATE OF ARKANSAS

APPELLANT

V.

PRATT CATES REMMEL, JR.; GALE
STEWART; GLEN HOOKS; ROBERT
B LEFLAR; ELAINE DUMAS;
MICHAEL B. DOUGAN; HARVEY
JOE SANNER; AND JACKIE
SIMPSON

APPELLEES

**Opinion Delivered:** April 14, 2022

APPEAL FROM THE PULASKI
COUNTY CIRCUIT COURT
[NO. 60CV-21-341]

HONORABLE MORGAN E. WELCH,
JUDGE

REVERSED AND DISMISSED IN
PART; DISMISSED IN PART; AND
REMANDED. MOTION TO STRIKE
DENIED.

**RHONDA K. WOOD, Associate Justice**

This is a lawsuit against Attorney General Leslie Rutledge in both her official and individual capacities. The dispute centers on the Attorney General's spending on TV commercials and legal filings in out-of-state federal litigation. The lawsuit contains two primary allegations and requests for relief: first, that the Attorney General has exceeded her authority and should be enjoined from continuing to act in excess of her authority and second, that she has spent funds in excess of her authority, which constitutes an illegal exaction. The matter comes before us now on an interlocutory appeal after the circuit court denied the Attorney General's assertions of various immunity defenses.

As for the first claim for relief, we hold that the Attorney General has sovereign immunity and cannot be enjoined because plaintiffs failed to show that any of the Attorney General's acts were ultra vires. Thus, we reverse and dismiss the claim for injunctive relief. As to the second allegation, the illegal exaction, we hold that Leslie Rutledge as an individual is entitled to statutory immunity because plaintiffs failed to allege that she acted maliciously. Thus, we also reverse and dismiss the individual-capacity claim for an illegal exaction.

But the official-capacity claim for an illegal exaction is not subject to either sovereign or statutory immunity. We therefore dismiss this part of the appeal because it falls outside our appellate jurisdiction on interlocutory review.[1]

I. *Factual Background*

Several Arkansas taxpayers sued Attorney General Leslie Rutledge, both individually and in her official capacity. Plaintiffs generally objected to the decisions she has made while in office. First, they contended that the Attorney General filed briefs in national litigation "notwithstanding the absence of credible facts or legal precedence [sic] to support the claims . . . and without consult[ing]" the Governor or other state agency leaders. Examples of these cases include the NRA's bankruptcy case in Texas federal court; a lawsuit about the NRA's nonprofit status in New York federal court; and a request to intervene in an original action in the United States Supreme Court about the 2020 presidential election. Plaintiffs alleged the filings did not involve any state interests and were made only to further the Attorney General's political ends.

---

[1]Plaintiffs moved to strike portions of the Attorney General's opening brief. The motion is denied.

Second, plaintiffs alleged the Attorney General spent public funds on television and radio advertisements about consumer education that constituted an illegal exaction under the Arkansas Constitution and exceeded her statutory authority. Plaintiffs acknowledged the Attorney General's statutory authority to spend funds on consumer education but contended that the emphasis was self-promotion rather than consumer education.

Third, plaintiffs alleged the Attorney General exceeded her duties and committed an illegal exaction by engaging in partisan activities, such as serving as a national co-chair of "Lawyers for Trump!" and elevating political causes through social media. Their complaint said this: "Her activities and highly partisan statements, tweets, and media postings have clearly indicated that . . . Rutledge is an Attorney General who represents only those who agree with her political viewpoints."

Based on these allegations, plaintiffs asked the circuit court for (i) an injunction against the Attorney General to prohibit further actions that exceed her authority and (ii) a money judgment for an illegal exaction ordering repayment to the state treasury.

The Attorney General filed a motion to dismiss and raised three defenses relevant to this interlocutory appeal: absolute immunity; sovereign immunity; and statutory immunity. The motion also argued the complaint failed to state facts that would entitle plaintiffs to relief. Last, the motion argued the political-questions doctrine barred the lawsuit.

The circuit court denied the motion to dismiss but addressed only two of the immunity defenses. First, the court held the Attorney General wasn't entitled to sovereign immunity because the facts as alleged in the complaint showed the Attorney General had been acting ultra vires and without legal authority. Second, the court held the Attorney

3

General wasn't entitled to qualified immunity because the alleged facts showed she acted in bad faith and in an injurious manner. But the circuit court never ruled on absolute immunity or the political-questions doctrine.

The Attorney General filed this interlocutory appeal and argued the three immunity defenses precluded the lawsuit. She also argued the political-questions doctrine should apply. But our jurisdiction in this interlocutory appeal covers only "[a]n order denying a motion to dismiss or for summary judgment based on the defense of sovereign immunity or the immunity of a government official." Ark. R. App. P.–Civ. 2(a)(10). We address only the ruled-upon immunity challenges—here sovereign immunity and statutory immunity.[2] All other issues fall outside the scope of our review at this stage of the litigation.[3]

## II. *Law and Analysis*

### Part A. Sovereign Immunity and the Claim for Injunctive Relief

We first address the claim that the Attorney General exceeded her official authority and that the court should enjoin her from continuing to file lawsuits in federal court, running television advertisements, and tweeting about politics in a manner plaintiffs do not like. A lawsuit against a state official for injunctive relief can overcome sovereign immunity if the

---

[2]*See Ark. Dep't of Fin. & Admin. v. Carpenter Farms Med. Grp., LLC*, 2020 Ark. 213, at 11, 601 S.W.3d 111, 119; *Ark. Lottery Comm'n v. Alpha Mktg.*, 2012 Ark. 23, at 8, 386 S.W.3d 400, 405.

[3]The Attorney General contends the political-questions doctrine is a jurisdictional concern that we must address now. But the citation for that contention involved a pre-Amendment 80 case discussing whether the chancery court or the circuit court had jurisdiction to enjoin an election. *Catlett v. Republican Party of Ark.*, 242 Ark. 283, 286, 413 S.W.2d 651, 653 (1967).

4

suit adequately pleads the official acted illegally, unconstitutionally, or ultra vires.[4] The complaint must assert facts that, if proven, would demonstrate a legal violation.[5] We consider only the complaint and review de novo whether alleged facts surmounted sovereign immunity.[6]

The first issue is the Attorney General's decision to file briefs in out-of-state cases. As a general matter, the Attorney General "shall perform such duties as may be prescribed by law." Ark. Const. art. 6, § 22. One statute instructs the Attorney General to "defend the interests of the state in matters before the United States Supreme Court and all other federal courts." Ark. Code Ann. § 25-16-703(a) (Repl. 2014). Plaintiffs argue this interest arises only if the State of Arkansas is a party to the lawsuit. But the statute contains no such limitation, and we refuse to impose a restriction absent from the statutory text.

Next, plaintiffs allege the Attorney General's separate statutory duty to represent state agencies under Ark. Code Ann. § 25-16-702 restricts her power to defend the state's interest under section 703 discussed above. This is an inaccurate analysis of the law. The relevant text from section 702 provides:

> The Attorney General shall be the attorney for all state officials, departments, institutions, and agencies. Whenever any officer or department, institution, or agency of the state needs the services of an attorney, the matter shall be certified to the Attorney General for attention.

---

[4]*Martin v. Haas*, 2018 Ark. 283, at 7, 556 S.W.3d 509, 514.

[5]*See Williams v. McCoy*, 2018 Ark. 17, at 4, 535 S.W.3d 266, 269.

[6]*See Ark. Dep't of Educ. v. McCoy*, 2021 Ark. 136, at 4, 624 S.W.3d 687, 691.

5

Ark. Code Ann. § 25-16-702(a). Plaintiffs read the second sentence as requiring a certification, or "ask," from the state agencies before the Attorney General can pursue litigation in federal court under section 703. But again, the Attorney General's power under section 703 speaks broadly and does not reference section 702 or suggest a precondition. Plaintiffs have accordingly failed to plead sufficient facts to overcome sovereign immunity on this issue.

The second issue is the Attorney General's spending on consumer-education programming. Here, plaintiffs failed to show how the Attorney General's actions violated the law. Indeed, the statute allows the Attorney General to spend money from her "Consumer Education and Enforcement Account" for consumer education. Ark. Code Ann. § 4-88-105(e)(3)(A),(B)(x) (Supp. 2021). She can spend this money "in a manner determined by the office of Attorney General." *Id*. Plaintiffs do not dispute that the ads concerned consumer education.

Despite this clear statutory authorization, plaintiffs argue the Attorney General exceeded her authority by running consumer-education advertisements "leading up to the 2022 election." But the statute doesn't prohibit spending during election season. And the discretion to spend resides with the Attorney General under Arkansas law. Thus, plaintiffs failed to plead an ultra vires act by the Attorney General that would surmount a sovereign-immunity defense.

The third issue is the Attorney General's membership in certain partisan groups and social-media postings about politics. Plaintiffs identified no constitutional or statutory rule the Attorney General violated when she joined the "Lawyers for Trump!" group or

otherwise expressed political support for other causes. This allegation cannot surmount sovereign immunity either. Bare-bones allegations unsupported by law do not survive an immunity defense.

To conclude, plaintiffs' request for injunctive relief should have been summarily dismissed because they failed to plead facts to overcome sovereign immunity. None of the facts and legal allegations established that the Attorney General exceeded any legal authority.

Part B. Statutory Immunity and the Illegal-Exaction Claim in an Individual Capacity

Plaintiffs also brought an illegal-exaction claim against the Attorney General in her individual capacity. They ask that Leslie Rutledge, individually, be ordered to repay the state treasury. The Attorney General argues statutory or "qualified" immunity shields her from illegal-exaction lawsuits for acts occurring within the course and scope of employment. This is true for individual-capacity claims when, as is the case here, the complaint failed to identify malicious acts.

State officers and employees receive immunity from liability and suit "for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment." Ark. Code Ann. § 19-10-305(a) (Repl. 2016). It applies unless plaintiffs have "pled sufficient facts to support a finding that the acts or omissions were committed maliciously." *Dockery v. Morgan*, 2011 Ark. 94, at 20, 380 S.W.3d 377, 389. We have defined malice as "intent and disposition to do a wrongful act greatly injurious to another." *Fuqua v. Flowers*, 341 Ark. 901, 905, 20 S.W.3d 388, 391 (2000).

In *Dockery*, a plaintiff sued the commissioners of the Arkansas Game and Fish Commission in their individual capacities for an illegal exaction. 2011 Ark. 94, at 3, 380

7

S.W.3d at 380. The circuit court dismissed the complaint, holding the individual claims were barred by the statutory immunity conferred under Ark. Code Ann. § 19-10-305(a). We affirmed this ruling because the complaint, among other things, "failed to plead that [the commissioners'] acts . . . were committed maliciously." *Id.* at 20, 380 S.W.3d at 389.

Another case involved a federal section 1983 claim by a prison guard against prison officials. *Banks v. Jones*, 2019 Ark. 204, 575 S.W.3d 111. We held statutory immunity protected the prison official from an individual-capacity claim because the complaint lacked "factual allegations that [the prison official] acted with malice." *Id.* at 8, 575 S.W.3d at 117.

Here, plaintiffs did not allege that the Attorney General, in her individual capacity, acted with "intent and disposition to do a wrongful act greatly injurious to another." Again, the circuit court should have summarily dismissed the individual-capacity claim as plaintiffs failed to meet their pleading burden to surmount statutory immunity.

Part C. The Illegal-Exaction Claim in an Official Capacity

The complaint also sought judgment against the Attorney General in her official capacity for an illegal exaction. Sovereign immunity provides no defense to this claim because the more specific illegal-exaction provision from the constitution controls over the general sovereign-immunity provision. *See* Ark. Const. art. 16, § 13; *Streight v. Ragland*, 280 Ark. 206, 209–10 n.7, 655 S.W.2d 459, 461 n.7 (1983). Statutory immunity provides no defense either: the cases relied on by the Attorney General show that statutory immunity protects individual-capacity claims rather than official-capacity claims for an illegal exaction. *See Dockery*, *supra*; *Banks*, *supra*. And the circuit court failed to rule on absolute immunity, thus precluding our review in this appeal. So the circuit court's order denying the motion

8

to dismiss this claim is not appealable on an interlocutory basis because none of the immunity defenses before us apply.

### III. *Conclusion*

We now summarize the disposition. We reverse and dismiss the claim for injunctive relief. We reverse and dismiss the illegal-exaction claim against the Attorney General in her individual capacity. But we dismiss the appeal to the extent that it challenges the illegal-exaction claim against the Attorney General in her official capacity.

The illegal-exaction claim against the Attorney General in her official capacity remains the sole surviving claim upon remand. Still, this is not because we have found the claim to have merit but because we cannot evaluate the merits at this point.[7] Further, the Attorney General's absolute-immunity motion remains outstanding.

Reversed and dismissed in part; dismissed in part; and remanded. Motion to strike denied.

Special Justice JOHN R. SCOTT joins in this opinion.

WOMACK, J., concurs.

BAKER AND WYNNE, JJ., concur in part and dissent in part.

WEBB, J., not participating.

**SHAWN A. WOMACK, Justice, concurs.** I join the majority opinion in full. I write separately to explain how doing so is consistent with my dissenting opinion in *Thurston v. League of Women Voters*, 2022 Ark. 32, 639 S.W.3d 319. In *League of Women Voters*, I

---

[7]Plaintiffs' counsel expressed the following at the circuit-court hearing: "If her acts were not ultra vires, I don't know that we would have any basis for claiming that she has illegally . . . spent the money."

noted that "absent an express constitutional provision to the contrary," the State shall never be a defendant in any of its courts. *Id*. at 17, 639 S.W.3d at 327 (Womack, J., dissenting). Article 16, section 13 of the Arkansas Constitution is such a provision.

Our constitution provides that "[a]ny citizen of any county, city or town may *initiate suit*, in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of *any illegal exactions whatever*." Ark. Const. art. 16, § 13 (emphasis added). This text-based exception to the general prohibition of suits against the State is unlike the exceptions this court has created out of whole cloth for unconstitutional, ultra vires, and illegal acts. Here, a constitutional provision expressly affords citizens a *judicial* remedy against the State for illegal exactions. *Id*. Accordingly, the State—and by virtue, the Attorney General in her official capacity—cannot assert sovereign immunity when defending against a properly pled illegal-exaction claim.

**KAREN R. BAKER, Justice, concurs in part and dissents in part.** While I concur in the result reached by the majority in Parts (A) and (B), I dissent from the remainder of the opinion based on my position in *Bd. of Trustees of Univ. of Arkansas v. Andrews*, 2018 Ark. 12, 535 S.W.3d 616, and its progeny.

**ROBIN F. WYNNE, Justice, concurs in part and dissents in part.** I agree with the majority's disposition regarding sovereign immunity and illegal exaction. But I cannot join the majority's analysis of statutory immunity because statutory immunity does not apply to the claim for injunctive relief against the Attorney General in her individual capacity.

In their complaint, plaintiffs sued the Attorney General in her individual and official capacities, raising injunctive-relief and illegal-exaction claims. The Attorney General never

argued that the claim for injunctive relief was not brought against her in her individual capacity; in fact, she argued the opposite—that she was sued *only* in her individual capacity. And the trial court ruled that the Attorney General was sued in both her individual and official capacities, making no distinction between the injunctive-relief and illegal-exaction claims. Our review in this interlocutory appeal is limited to the issue of immunity. *Chaney v. Union Producing, LLC*, 2020 Ark. 388, at 8, 611 S.W.3d 482, 487. We cannot review the trial court's ruling that plaintiffs sued the Attorney General in her individual capacity. I would thus conclude that plaintiffs have stated a claim for injunctive relief against the Attorney General in her individual capacity.

Statutory immunity applies only to damages claims. Arkansas Code Annotated section 19-10-305(a) (Repl. 2016) provides that "[o]fficers and employees of the State of Arkansas are immune from liability from suit, except to the extent that they may be covered by liability insurance, for *damages* for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment." (Emphasis added.) This court has held that State officers and employees acting without malice within the course and scope of their employment are immune from an award of damages in litigation. *Grine v. Bd. of Trustees*, 338 Ark. 791, 797, 2 S.W.3d 54, 58 (1999). When determining whether State officers are entitled to statutory immunity, we have traditionally been guided by the standard used for qualified-immunity claims in federal civil rights actions. *Banks v. Jones*, 2019 Ark. 204, at 5, 575 S.W.3d 111, 116. And federal caselaw is clear—qualified immunity applies only to money damages, not to injunctive relief. *See Morse v. Frederick*, 551 U.S. 393, 400 n.1 (2007); *Hamner v. Burls*, 937 F.3d 1171, 1175 (8th Cir. 2019).

Because statutory immunity does not apply to claims for injunctive relief against a state officer sued in her individual capacity, it does not apply to the claim for injunctive relief against the Attorney General in her individual capacity. In reaching this conclusion, I do not assess whether the injunctive-relief claim has any merit. I merely conclude that the Attorney General is not immune from suit on this claim.

*Leslie Rutledge*, Att'y Gen., by: *Michael A. Cantrell*, Ass't Att'y Gen.; and *Kesia Morrison*, Ass't Att'y Gen., for appellant.

*Richard Mays Law Firm, PLLC*, by: *Richard H. Mays*, for appellees.