

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV–13–1060

| | | |
|---|---|---|
| CHRIS GAMBLE | APPELLANT | **Opinion Delivered** September 3, 2014 |
| V. | | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT [NO. CV–2011–55] |
| WES WAGNER | APPELLEE | HONORABLE DAVID N. LASER, JUDGE |
| | | AFFIRMED |

## RITA W. GRUBER, Judge

Appellant Chris Gamble loaned his portable, programmable, electronic sign to appellee Wes Wagner for use in appellee's political campaign. The sign was irreparably damaged, and appellant filed a negligence lawsuit against appellee. At the close of appellant's case, the circuit court granted appellee's motion for directed verdict and dismissed the case. Appellant brings this appeal, arguing that we should reverse because the motion was not made at the proper time and because appellant presented sufficient evidence of negligence and damages to present to a jury. We affirm the circuit court's judgment.

Appellant owns several furniture stores and mini-storage units in Manila and Jonesboro, which he and his brother manage. In December 2009, appellant bought an LED sign mounted on a trailer for $8,120.50 that he used daily to advertise at his various businesses. In April 2010, appellee, a friend who had attended high school with appellant,

SLIP OPINION

asked to borrow the sign trailer for his state-representative campaign. There was no contract; appellant simply loaned the trailer to appellee as a friend. Testimony differed regarding who retrieved the trailer sign from appellant's Manila furniture store—appellee insisted that he did not pick up the sign himself, although he did not say who did; appellant's brother and another employee testified that they saw appellee pick up the sign. In either case, appellee obtained the sign and stored it for several weeks at his father's house in Manila. Appellant, his brother, and an employee of the Manila store all testified that the sign was in working order when it was picked up.

Several weeks later, appellant called appellee and asked if appellee was going to bring the sign to appellant's Jonesboro store so appellant could program the sign for him. When appellee brought the sign to the Jonesboro store, appellant was working outside and saw appellee drive into the parking lot. Appellant said that the "guts were hanging out" of the sign and he asked appellee what had happened. The sign was inoperable. According to appellant, appellee said he did not know but not to worry—that he would pay for it. Appellee took the sign to a sign company, which informed him that the sign was not repairable. In spite of appellee's assurance that he would "take care of" the sign, the sign was never repaired, and both parties agreed that it could not be repaired.

Appellee testified that he had "no idea" how the sign got from appellant's Manila furniture store to his parents' house but said that he drove the sign 37 miles from his parents' house in Manila to appellant's store in Jonesboro to get it programmed. He said he did not notice that the back panel was missing or that the control panel was hanging out of the sign

2

when he picked it up from his parents' house. He said that he did not do anything to damage the sign and that he drove as an "ordinary, cautious driver pulling a trailer." Appellee testified that he drove his route from Manila back and forth twice looking for the metal that was missing from the sign but did not find it.

Trent Francis, the owner of American Outdoor Fabrication, testified that he sold the trailer sign to appellant. He said that he had probably built twenty similar signs. He said that he fabricated the trailer himself but that the sign was a mail-order digital outdoor sign that he ordered off the internet. He testified that the sign was made to withstand the elements but that he had never repaired one and was not familiar with the sign's "inner workings." He also said that all the screws to appellant's sign were missing down the back and that the damage was not something that "normally happens just pulling this down the road." He said that it was not repairable and that appellant would be required to buy a new sign: "I do not know who you would get to repair it because they are kind of expensive to buy and you would have to send the thing to China or something and get it fixed." He said that the trailer was fine and he would just replace all the electronics.

Appellant filed a complaint in negligence against appellee, alleging that appellee had a duty to use ordinary care so that the sign he borrowed from appellant would not get damaged and that he breached the duty when the sign was returned in an inoperable, non-repairable condition. The complaint alleged that the damage to the sign was consistent with hitting or bumping it too hard or transporting the sign in a reckless manner and that appellee transported it in a reckless manner causing the damage. He alleged that the fair market value

of the sign was $8,120.50 (the purchase price paid) and that he had spent $1,701 in advertising due to the sign's failure to operate. After appellant rested his case, the circuit court granted appellee's motion for a directed verdict and dismissed the case. Appellant filed this appeal.

A trial court evaluates a motion for directed verdict by deciding whether the evidence is sufficient for the case to be submitted to the jury; that is, whether the case constitutes a prima facie case for relief. *Wal-Mart Stores, Inc. v. Tucker*, 353 Ark. 730, 739, 120 S.W.3d 61, 66 (2003). In making that evaluation, the trial court does not weigh the evidence; rather, the trial court is to view the evidence in a light most favorable to the party opposing the motion. *Id.* In reviewing an order granting a motion for directed verdict, we view the evidence in the light most favorable to the party against whom the verdict was directed. *Trotter v. Bowden*, 81 Ark. App. 259, 260, 101 S.W.3d 264, 265 (2003). If any substantial evidence exists that tends to establish an issue in favor of that party, then a jury question is presented and the directed verdict should be reversed. *Id.* at 260, 101 S.W.3d at 265–66. Substantial evidence is evidence of sufficient force and character to induce the mind of the fact-finder past speculation and conjecture. *Sparks Reg'l Med. Ctr. v. Smith*, 63 Ark. App. 131, 133, 976 S.W.2d 396, 397 (1998).

I. *Timeliness of Directed-Verdict Motion*

Appellant's first challenge on appeal is to the timeliness of appellee's motion for directed verdict. Rule 50 of the Arkansas Rules of Civil Procedure governs the timing of motions for directed verdict. It gives a party two opportunities to move for a directed

verdict: (1) at the close of the evidence offered by an opponent; and (2) at the close of all of the evidence. Ark. R. Civ. P. 50(a) (2013). Appellant contends that appellee made his motion during his own case rather than after appellant rested or at the close of all of the evidence.

Appellant put on seven witnesses in his case in chief, ending with Chief of Police Jackie Hill. One of those witnesses called by appellant was appellee, Wes Wagner. The following colloquy occurred at the conclusion of Chief Hill's testimony:

APPELLANT'S COUNSEL: At this time the plaintiff rests, your Honor.

THE COURT: All right. Now ---

APPELLEE'S COUNSEL: Now, before he closes, can I recall Mr. Wagner?

THE COURT: You want to at this point in time?

APPELLEE'S COUNSEL: Yes, sir. Before we begin his case I want to do it in his case. I think I got a right to.

THE COURT: Well, that's fine, go ahead and recall him. You're still under oath, Mr. Wagner.

THE WITNESS: Yes, sir.

THE COURT: I'll let his motion, then resting, to be deferred until after this witness.

[WITNESS TESTIFIED]

. . . .

THE COURT: All right, you rest at this time?

APPELLANT'S COUNSEL: Yes, Your Honor.

. . . .

5


THE COURT: We're out of the presence of the jury, are there defense motions or motions on behalf of anybody?

APPELLEE'S COUNSEL: Your Honor, the defense will move for a directed verdict at this time and our basis for the directed verdict report is the Court has heard no explicit evidence, no evidence whatsoever as to what negligent act Mr. Wagner committed that would cause damage, or that was the [proximate] cause of damage to that sign.

Appellee was entitled under Rule 50 to make a motion for directed verdict at the close of appellant's evidence. That is exactly what he did. Although appellee recalled one of appellant's witnesses, he specifically did so in appellant's case in chief. Following the testimony, the court asked appellant if he rested, and appellant's counsel rested. The court then asked if there were any motions to be made, at which point appellee's counsel moved for a directed verdict. We hold that the motion was timely made.

## II. *Negligence*

For his second point on appeal, appellant claims that the court erred in granting appellee's directed-verdict motion because appellant presented sufficient evidence of negligence to go to the jury. Viewing the evidence in the light most favorable to appellant, we assume appellee personally picked up the sign from appellant's Manila furniture store. The parties agree that the sign then spent several weeks at appellee's parents' home before appellee drove the sign to appellant's Jonesboro store, where it was found to have been damaged. Appellant presented no evidence of how this damage occurred. Nor did he present evidence rebutting the fact that the sign was not in appellee's possession for the entire period that it was out of appellant's possession. It is pure speculation to conclude that the damage happened while appellee was driving the sign to the Jonesboro store on the day the damage

was discovered. No witness testified to having seen the sign or appellee with the sign before or during its transport. It is not clear when the sign was damaged, only that it occurred after it left appellant's Manila store. In other words, the sign was damaged at some point during the two-week period: when it was transported to appellee's parents' home; during the time it remained stored at their home; or while being driven to appellant's Jonesboro store on the day the damage was discovered.

Although appellant argues on appeal that this is a perfect case for the doctrine of res ipsa loquitur, we disagree. This presumption is limited to situations in which the defendant's negligence has been substantially proven. *Barker v. Clark*, 343 Ark. 8, 14, 33 S.W.3d 476, 480 (2000). Our supreme court has clarified that the defendant's exclusive possession and control of the instrument is a required element: "To make certain that the injury has not been caused by somebody else, through some intervening negligence, it is ordinarily required that the instrumentality causing injury have been in defendant's exclusive possession and control up to the time of the plaintiff's injury." *Id.*; *see also* AMI Civ. 609 (stating that exclusive control of the instrumentality by the defendant is a required element of res ispa loquitur). There was no evidence establishing that the sign trailer was in appellee's exclusive possession and control. In fact, it resided at appellee's parents' home for the majority of time it was not with appellant.

This is a negligence case. Appellant has failed to present substantial evidence that the sign was damaged due to appellee's negligence. Accordingly, we affirm the circuit court's decision.

SLIP OPINION



Affirmed.

HARRISON and WOOD, JJ., agree.

*Scholtens & Averitt, PLC*, by: *Chris A. Averitt*, for appellant.

*Hope, Trice, O'Dwyer & Wilson, P.A.*, by: *Ralph "Win" Wilson III*, for appellee.