SLIP OPINION

Cite as 2015 Ark. App. 298

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-14-667

| | |
|---|---|
| JEFFREY D. HAMBY, M.D.<br>APPELLANT<br><br>V.<br><br>HEALTH MANAGEMENT<br>ASSOCIATES, INC.<br>APPELLEE | Opinion Delivered MAY 6, 2015<br><br>APPEAL FROM THE CRAWFORD<br>COUNTY CIRCUIT COURT<br>[NO. CV-2010-593(II)]<br><br>HONORABLE LYNN WILLIAMS,<br>JUDGE<br><br>AFFIRMED IN PART; REVERSED<br>AND REMANDED IN PART |

**DAVID M. GLOVER, Judge**

Appellant Dr. Jeffrey Hamby brings this appeal from an order dismissing his claims against appellee Health Management Associates, Inc. (HMA) pursuant to Arkansas Rules of Civil Procedure 8(a) and 12(b)(6). The sole issue on appeal is the legal sufficiency of Dr. Hamby's claims against HMA as presented in his second amended complaint (SAC). Because we conclude that the trial court abused its discretion by dismissing a portion of Dr. Hamby's claims against HMA, we affirm in part and reverse and remand in part.

HMA is the operator and part-owner of Summit Medical Center in Van Buren, Arkansas. Pursuant to a contract with HMA, Emcare Physician Providers, Inc. (Emcare) provided emergency-medical services to Summit Medical Center. Emcare hired Dr. Hamby to serve as an emergency-medical physician at Summit Medical Center. His contract was effective on October 1, 2009, and had a one-year term. Several months into the term of the

contract, in May 2010, Emcare officials notified Dr. Hamby that his contract was being terminated for cause.

As a result of his termination, Dr. Hamby sued HMA, Emcare, Dr. Joni Carmack, and Dr. Michael Wheelis.[1] He amended his complaint twice, and his SAC is the operative pleading for our review. The SAC sets forth three causes of action against HMA: (1) tortious interference, (2) violations of the Arkansas Deceptive Trade Practices Act (DTPA), and (3) violations of the Civil Action by Crime Victims Act (CACVA). Dr. Hamby's general theory of his case set forth in the SAC is that HMA was engaged in a scheme to increase its profit by unnecessarily and improperly performing medical tests and admitting patients. He alleges that when he refused to be complacent in this scheme, Emcare prematurely terminated his employment at the behest of HMA.

HMA petitioned the trial court to dismiss the claims against it. The trial court entertained arguments on this motion and ultimately granted the motion to dismiss in its entirety pursuant to Arkansas Rules of Civil Procedure 8(a) and 12(b)(6). Dr. Hamby timely appealed.

## I. *Standard of Review*

Our standard of review for the granting of a motion to dismiss is whether the trial court abused its discretion. *Dockery v. Morgan*, 2011 Ark. 94, 380 S.W.3d 377. In reviewing a trial court's decision on a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint. *Id.* All reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be

---

[1] Drs. Carmack and Wheelis are agents and employees of Emcare.

liberally construed. *Id.* However, our courts consistently hold that a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. *Born v. Hosto & Buchan, PLLC*, 2010 Ark. 292, 372 S.W.3d 324.

## II. *Tortious Interference*

Dr. Hamby alleges in his SAC that HMA tortiously interfered with his employment contract with Emcare. A meritorious claim for tortious interference requires (1) the existence of a valid contractual relationship or business expectancy, (2) knowledge of the relationship or expectancy by the interfering party, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship has been disrupted. *Baptist Health v. Murphy*, 2010 Ark. 358, 373 S.W.3d 269. HMA does not challenge that Dr. Hamby has sufficiently pled these elements in his SAC.

In addition to these requirements, the interfering party's conduct must be improper. *Id.* The parties dispute whether Dr. Hamby has alleged facts demonstrating that HMA's conduct was improper. Impropriety is determined by (1) the nature of the actor's conduct, (2) the actor's motive, (3) the interests of the other with which the actor's conduct interferes, (4) the interests sought to be advanced by the actor, (5) the social interests in protecting the freedom of the action of the actor and the contractual interests of the other, and (6) the proximity or remoteness of the actor's conduct to the interference and the relations between the parties. *Id.* The actor's conduct is to be considered in light of what is fair and reasonable under the circumstances. *Hayes v. Advanced Towing Servs.*, 73 Ark. App. 36, 40 S.W.3d 800 (2001). The determination of whether the interference is improper is ordinarily left to the

SLIP OPINION

jury. *Id.*

As a preliminary matter, HMA contends that any interference it had with Dr. Hamby's employment contract was necessarily proper because of privilege. Privilege is an affirmative defense that HMA bears the burden of proving. AMI Civ. 403 (2014). When reviewing a motion to dismiss pursaunt to Ark. R. Civ. Pro. 12(b)(6), the trial court must look only to the complaint. *Moore v. Wallace*, 90 Ark. App. 298, 205 S.W.3d 824 (2005). Any discussion of HMA's privilege to interfere is not ripe for our review, and we need not consider this argument.

Turning our attention to the SAC, Dr. Hamby generally contends that, due to interference by HMA, he was prematurely terminated by Emcare because he refused to take part in HMA's scheme to increase its revenue by improperly increasing patient admissions and medical testing in the emergency department. Dr. Hamby alleges that in September 2008, HMA appointed Gary Newsome as president and CEO, and he announced that he would improve HMA's financial performance by improving its emergency-department operations. Several months later, in April 2009, internal correspondence from HMA indicated that Newsome was disappointed in the admission numbers at Summit Medical Center. Emcare began overseeing emergency-department physicians' benchmarks and admission rates in October 2009. Several months later, in March 2010, Emcare officials chastised the emergency-department physicians for missing opportunities to order additional billable testing. And eventually, Emcare began implementing quality reviews of Dr. Hamby's charts.

The "smoking gun" linking HMA to the termination of Dr. Hamby's employment

with Emcare comes from an April 2010 email from Pam Tahan, the CEO of Summit Medical Center. In that email, she wrote to Emcare officials, "We continue to have issues with low ER metrics from Dr. Hamby and [another physican]. Please send me your plan for how this will be resolved." An Emcare representative responded that Dr. Hamby would be terminated, and his termination formally occurred in May 2010.

In reviewing an order granting a motion to dismiss, we must treat the facts alleged by Dr. Hamby as true, construe the pleadings liberally, and resolve all reasonable inferences in favor of the complaint. *Dockery, supra.* The facts alleged by Dr. Hamby indicate that HMA intended to increase revenue in its emergency departments and had input into ensuring that the staff at Summit Medical Center was pursuing this goal. According to the SAC, Dr. Hamby's work was criticized because of his failure to conform to HMA's objective. The email by Pam Tahan, when read with the preceding allegations, is sufficient to raise a factual question of whether HMA improperly interfered with Dr. Hamby's employment contract with Emcare. The trial court abused its discretion in dismissing the tortious-interference claim, and we reverse and remand on this issue.

III. *Deceptive Trade Practices Act*

Dr. Hamby also sued HMA for violations of the DTPA. Specifically, he contends that HMA knowingly took advantage of a consumer who is reasonably unable to protect his or her own interest because of physical infirmity. Ark. Code Ann. § 4-88-107(a)(8)(A) (Repl. 2011). Additionally, he claims that HMA violated the catch-all provision of this statute by engaging in an unconscionable, false, or deceptive act or practice in business, commerce, or trade. Ark. Code Ann. § 4-88-107(a)(10).

We have previously determined that, for purposes of the review of a motion to dismiss, Dr. Hamby sufficiently alleged facts to establish that HMA was engaged in a scheme to increase revenue in its emergency departments. As a result of this alleged scheme, HMA officials began overseeing the operations of the emergency department at Summit Medical Center with an emphasis on increasing its revenue, and this oversight occurred irrespective of the fact that Emcare managed the emergency department at Summit Medical Center. According to Dr. Hamby's SAC, HMA's oversight created pressure to increase admissions and medical testing. This pressure manifested itself when Emcare officials chastised emergency-department physicians for failing to perform all possible billable testing and conducting quality reviews of Dr. Hamby's patient charts. These facts, taken as true, support Dr. Hamby's allegations that HMA was valuing earnings over patient care. Accordingly, we conclude that Dr. Hamby has sufficiently alleged a violation of the DTPA. This alleged conduct by HMA takes advantage of physically infirm customers and is an unconscionable business practice. Ark. Code Ann. § 4-88-107(a)(8)(A) & (10).

We must also consider whether Dr. Hamby suffered damages as a result of the alleged DTPA violations. Actual damages are required for a private right of action for a DTPA violation. *Baptist Health v. Murphy*, 2010 Ark. 358, 373 S.W.3d 269; Ark. Code Ann. § 4-88-113(f). Dr. Hamby contends that he was damaged because there was harm to his physician-patient relationships and because his termination resulted in him losing income in the amount of $265,500. According to his SAC, Dr. Hamby was terminated because of his resistance to take part in HMA's scheme to increase revenue. Consequently, Dr. Hamby has alleged actual damages sufficient to withstand a motion to dismiss.

SLIP OPINION

Therefore, we conclude that the trial court abused its discretion in dismissing Dr. Hamby's DTPA claim and reverse and remand on this issue.

### III. *Civil Action by Crime Victim Act*

Dr. Hamby also pursues a claim against HMA for a CACVA violation. This statute is codified at Arkansas Code Annotated section 16-118-107(a)(1) (Supp. 2013) and provides that "any person injured or damaged by reason of conduct of another person that would constitute a felony under Arkansas law may file a civil action to recover damages based on the conduct." In order to prevail on a motion to dismiss, Dr. Hamby must allege facts to show that HMA engaged in felonious conduct that proximately caused him injury.

The felonious conduct allegedly committed by HMA includes a theft of public benefits[2] and violations of the Medicaid Fraud Act.[3] In each instance, Dr. Hamby alleges that HMA's scheme to increase revenue by increasing patient admissions and medical testing resulted in HMA making false statements or misrepresentations in order to receive public benefits. The success of the CACVA claim is contingent upon Dr. Hamby alleging facts in his SAC that indicate that HMA improperly received public funds.

We need not consider the theft-of-public-benefits claim and Medicaid Fraud claim separately because each is without merit. The SAC includes no allegation that Dr. Hamby unnecessarily or improperly admitted patients or performed medical testing that resulted in fraudulent billing for public funds. Rather, his allegations are that emergency-department physicians were pressured to do so and that he was terminated when he refused to succumb

---

[2] Ark. Code Ann. §§ 5-36-201 et seq. (Repl. 2013).

[3] Ark. Code Ann. §§ 5-55-101 et seq. (Repl. 2005 & Supp. 2013).

to the pressure. Additionally, he does not allege that any other medical provider engaged in this conduct. Dr. Hamby's CACVA claim requires us to speculate that patients were unnecessarily and improperly tested and admitted and that this resulted in fraudulent demands for payment from public funds.

Arkansas is a fact–pleading state, and Arkansas Rule of Civil Procedure 8(a)(1) requires that a complaint state facts, not mere conclusions, in order to entitle the pleader to relief. *Born, supra*. While facts alleged in a complaint are treated as true, the plaintiff's theories or speculation are not. *Worden v. Kirchner*, 2013 Ark. 509, 431 S.W.3d 243. Without any factual support for Dr. Hamby's theory that public benefits were fraudulently received by HMA, we cannot say that the trial court abused its discretion by dismissing the CACVA claim. Accordingly, we affirm the dismissal of Dr. Hamby's CACVA claim.

Affirmed in part; reversed and remanded in part.

KINARD and HIXSON, JJ., agree.

*Robertson, Beasley & Ford, PLLC*, by: *Mark E. Ford*; and
*Williams & Anderson PLC*, by: Peter *G. Kumpe*, *Marie-B Miller*, and *Alec Gaines*, for appellant.

*Robinson, Staley & Duke, P.A.*, by: *Thomas B. Staley*; and
*Gass Weber Mullins, LLC*, by: *J. Ric Gass*, Pro Hac Vice, for appellee.