BART F. VIRDEN, Judge
Farm Credit Midsouth, PCA, appeals from a Crittenden County jury's verdict in favor of appellees Fred Bollinger Jr., individually, and his related farming entities Bollinger Lone Oak, Inc., and Bollinger Partners, Inc. (collectively, the Bollingers). The Bollingers cross-appeal from the circuit court's decisions granting summary judgment or directed verdicts in favor of Farm Credit on certain of the Bollingers' claims. We affirm in part and reverse in part on direct appeal; we affirm on cross-appeal.
I. Background
Beginning in 2003, Farm Credit made a series of operating and equipment loans to the Bollingers' farming operations. The *169 loans were secured by various security agreements and mortgages granting Farm Credit liens in the Bollingers' crops, government payments, crop insurance, equipment, and real estate. The Bollingers had a disastrous 2007 crop season when a late-April freeze damaged their wheat crop. Later, a severe drought reduced their soybean yield. Because of these weather impacts, the Bollingers, who had booked their crops with Riceland Foods, were unable to produce enough grain to fulfill their contracts with Riceland. This caused a default on the Farm Credit loans.
After the Bollingers defaulted, Farm Credit filed a foreclosure and replevin action in 2009 for judgment on the notes and foreclosure of the collateral.[1]
The Bollingers answered, raising affirmative defenses. They also filed a counterclaim, asserting three basic claims: (1) that Farm Credit improperly required the Bollingers to book their crops as a condition of receiving loans; (2) that Farm Credit disclaimed any interest in the proceeds of the Bollingers' 2008 soybean crop only later to renege on its disclaimer and wrongfully assert a lien on those proceeds; and (3) that Farm Credit mishandled the Bollingers' crop-insurance applications and claims.[2] The Bollingers also sought punitive damages and a jury trial on all issues triable by jury.
The circuit court granted partial summary judgment in favor of Farm Credit on the Bollingers' claim for punitive damages. Farm Credit also moved for summary judgment on its complaint, which the circuit court granted as to liability but withheld entry of a final summary judgement until after trial of the Bollingers' counterclaim when the value of all of the claims could be determined.
The case was submitted to a jury over several days. The circuit court directed verdicts in favor of Farm Credit on certain claims. The jury found in favor of the Bollingers on all three of their claims, based on multiple theories on each claim. In entering judgment on the jury's verdict, the court found that the Bollingers were entitled to only one recovery on each of their claims. Thus, Fred Bollinger, Jr., was awarded a total of $564,564.35; Bollinger Lone Oak, Inc., a total of $534,314.42; and Bollinger Partners, Inc., a total of $389,108.15.
Farm Credit filed a timely motion for judgment notwithstanding the verdict (JNOV) or, alternatively, for new trial, which was denied after a hearing. The Bollingers also filed a posttrial motion seeking prejudgment interest on their claims for Farm Credit's asserting a lien on their 2008 soybean crop. At the conclusion of a telephone hearing, the court granted the motion and awarded the Bollingers a total of $173,867.45. This appeal and cross-appeal timely followed.
II. Finality
Before addressing the merits of the appeal and cross-appeal, we must first address an issue of finality. The issue is that there was no express resolution of Farm Credit's complaint for foreclosure.
*170 As mentioned above, the circuit court granted summary judgment in favor of Farm Credit on its foreclosure complaint. However, the court withheld entry of a judgment in favor of Farm Credit until after trial of the Bollingers' counterclaim. The court said that it intended to issue a judgment once the amounts of the various claims were determined. Between the entry of the summary-judgment order as to liability and trial, however, Fred Bollinger, Jr., and Fred Bollinger, Sr., sold their interests in Bollinger Brothers, Inc., and paid off the principal and interest owing on loans made to Bollinger Lone Oak, Inc., and Bollinger Partners, Inc., secured by mortgages on land owned by Bollinger Brothers, Inc. Farm Credit subsequently released the mortgages securing the loans. Obviously, by having the loans paid and the mortgages released, there was no further need for action on Farm Credit's complaint. Both parties acknowledge that no order was ever entered finally adjudicating Farm Credit's complaint.
Generally, this lack of an order disposing of Farm Credit's complaint would render the judgment entered on the Bollingers' counterclaim nonfinal. See Bevans v. Deutsche Bank Nat'l Tr. Co. , 373 Ark. 105, 281 S.W.3d 740 (2008). However, Farm Credit's notice of appeal contains a statement that it abandoned all pending but unresolved claims. This abandonment operates as a dismissal with prejudice effective on the date that the otherwise final judgment appealed from was entered. Ark. R. App. P.-Civ. 3(e)(vi). We hold that the statement in the notice of appeal was sufficient to render the judgment entered on the jury's verdict final and appealable even though there was no express final adjudication of Farm Credit's complaint. Ark. R. App. P.-Civ. 3 ; Bradshaw v. Fort Smith Sch. Dist. , 2017 Ark. App. 196, at 4, 519 S.W.3d 344, 347.
III. Arguments on Appeal
We depart from our usual practice of addressing the points of error in the order raised by the parties and address the points topically, including arguments on both direct appeal and cross-appeal. This is done in an attempt to make it easier on the reader of this opinion.
On appeal, Farm Credit argues that (1) it is entitled to a new trial because the Bollingers received a double recovery; (2) there is no substantial evidence to support the jury's verdict on tortious interference; (3) there is no substantial evidence to support the jury's verdict on deceit as to the 2008 soybean crop; (4) there is no substantial evidence to support the verdict for promissory estoppel; (5) there is no substantial evidence to support the claims for negligence and breach of fiduciary duty arising out of the 2008 soybean crop; (6) there is no substantial evidence to support the jury's verdict of promissory estoppel on crop insurance; (7) it is entitled to a new trial because the circuit court erred by allowing the jury to decide the Bollingers' counterclaim; and (8) the court erred in granting prejudgment interest.
On cross appeal, the Bollingers argue that the circuit court erred in granting Farm Credit directed verdicts on their claims for (1) negligence in the booking claim; (2) breach of fiduciary duty in the booking claim; (3) reduced yields; (4) and unplanted crops; and in granting Farm Credit summary judgment on their booking-penalties claim.
IV. Standard of Review
Both parties challenge the circuit court's rulings on motions for directed verdicts. A circuit court evaluates a motion for directed verdict by deciding whether the evidence is sufficient for the case to be submitted to the jury; that is, whether the *171 case constitutes a prima facie case for relief. Gamble v. Wagner , 2014 Ark. App. 442, 440 S.W.3d 352. In making that determination, the circuit court does not weigh the evidence; rather, it is to view the evidence in the light most favorable to the party against whom the verdict is sought and give it its highest probative value, taking into account all reasonable inferences deducible from it. Id. If any substantial evidence exists that tends to establish an issue in favor of that party, then a jury question is presented. Id. Substantial evidence goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. Id.
V. Discussion
A. The Booking Claim
The Bollingers' first claim is their "booking" claim. Although Farm Credit denied it, the Bollingers claimed that as a requirement of receiving their 2007 crop loans, Farm Credit forced the Bollingers to "book" their crops. "Booking" means that the Bollingers entered into contracts to set the amount and price of the crops in advance of their planting, with Riceland Foods or some other buyer. In other words, they would sell in advance of planting a predetermined amount of grain at a predetermined price. The Bollingers argued that Farm Credit, by requiring them to book their crops, interfered with their right to market their crops however they pleased and to whomever they pleased at the time of harvest. They also argued that this introduced an unacceptable level of uncertainty and risk into their operations. In late 2006, the Bollingers booked both their 2007 and 2008 crops.
The Bollingers pursued their booking claim under theories of negligence, breach of fiduciary duty, and tortious interference with contractual relations or business expectancies. The circuit court directed verdicts in favor of Farm Credit on the negligence and breach-of-fiduciary-duty theories. The jury found in favor of the Bollingers on their tortious interference claim and awarded the Bollingers $987,417. Farm Credit argues that the circuit court should have granted a directed verdict on this cause of action.
Our supreme court recently set out the elements of the cause of action as follows:
The elements of tortious interference are (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. A fifth requirement has been added by this court: the conduct of the defendant must be "improper." In addition to the above, another essential element of a tortious-interference-with-contractual-relations claim is that there must be some third party involved.
Ballard Grp., Inc. v. BP Lubricants USA, Inc. , 2014 Ark. 276, at 14-15, 436 S.W.3d 445, 454 (citations omitted). Furthermore, the expectancy that is obstructed must be precise, and it must be sufficiently concrete in order to qualify as a business expectancy and survive summary dismissal. See Skalla v. Canepari , 2013 Ark. 415, 430 S.W.3d 72.
The chief distinction between a cause of action for interference with a contractual relationship and a cause of action for interference with a business expectancy lies in whether there is a present contractual relationship or whether there is merely some prospective relationship that is interfered with. See, e.g. , *172 Stewart Title Guar. Co. v. Am. Abstract & Title Co. , 363 Ark. 530, 215 S.W.3d 596 (2005) ; Restatement (Second) of Torts § 766B cmt. a (1979). Our supreme court has noted that tortious interference with an existing contract needs "greater protection," whereas tortious interference with a business expectancy needs only "some protection." Mason v. Funderburk , 247 Ark. 521, 526-27, 446 S.W.2d 543, 547 (1969). There is a greater recognition of privilege as a defense in the case of interference with business expectations. Walt Bennett Ford, Inc. v. Pulaski Cty. Special Sch. Dist. , 274 Ark. 208, 214-B, 624 S.W.2d 426, 429-30 (1981) (citing W. Prosser, The Law of Torts , § 130 (4th ed. 1971) ).
The first element of the tort may be proved by demonstrating either a valid contractual relationship or a business expectancy. Cross v. Ark. Livestock & Poultry Comm'n , 328 Ark. 255, 262, 943 S.W.2d 230, 234 (1997). The Bollingers do not allege that they had an existing contract with Riceland; instead, they argue that they had a preexisting relationship with Riceland and sold their crops to Riceland as harvested each year. The business relationships protected by this tort include any prospective contractual relations if the potential contract would be of pecuniary value. Stewart Title , 363 Ark. at 542-43, 215 S.W.3d at 603. The protected relationships also include a "continuing business or other customary relationship" which is non-contractual. Stewart Title , 363 Ark. at 543, 215 S.W.3d at 603 (quoting Restatement (Second) of Torts § 766B, cmt. c (1979) ). This includes potential opportunities to sell or buy, and options. Id. Here, the Bollingers would enter into contracts with Riceland as each crop season progressed. As the Bollingers argued to the circuit court in response to Farm Credit's motion for directed verdict on this claim, the expectancy was that the Bollingers would control the marketing and selling of their crops without interference. The question of whether a valid business expectancy existed was a question for the jury to determine. Stewart Title, supra. It is clear from the jury's verdict that they found such an expectancy. Accordingly, we conclude that the Bollingers had a valid expectancy entitled to protection. As such, there was no requirement that there be a third party involved. Ballard Grp., Inc. v. BP Lubricants USA, Inc., supra ; Faulkner v. Ark. Children's Hosp. , 347 Ark. 941, 961, 69 S.W.3d 393, 406 (2002).
The next necessary element of the cause of action for tortious interference requires that the relationship be terminated or breached. See Navorro-Monzo v. Hughes , 297 Ark. 444, 447, 763 S.W.2d 635, 636 (1989).[3] After the Bollingers "booked" their crops, their relationship with Riceland continued, albeit on somewhat different terms than before. Therefore, we conclude there was a failure to prove a termination of breach of the relationship.
This brings us to the next question, if Farm Credit required the Bollingers to "book" their crops as a condition for the further extension of credit, did such requirement amount to an improper interference with the Bollingers' business expectancy.
Impropriety is determined by (1) the nature of the actor's conduct, (2) the actor's motive, (3) the interests of the other with which the actor's conduct interferes, (4) the interests sought to be advanced by the actor, (5) the social interests in protecting the freedom of the action of the actor and the contractual interests of the other, and (6) the proximity or remoteness *173 of the actor's conduct to the interference and the relations between the parties. Hamby v. Health Mgmt. Assocs., Inc. , 2015 Ark. App. 298, at 3, 462 S.W.3d 346, 349-50. The actor's conduct is to be considered in light of what is fair and reasonable under the circumstances. Id. The determination of whether the interference is improper is ordinarily left to the jury. Id.
What is missing from the Bollingers' argument is any discussion of the factual support for the jury's finding that Farm Credit's actions were improper. Indeed, in their summary of the elements of the cause of action, the Bollingers omit any discussion of impropriety, and they argue only that the verdict should be upheld because the jury was instructed on the seven factors set out above. The only evidence supporting impropriety was the testimony of Mack Adams, a former Farm Credit loan officer who handled the Bollingers' account, that requiring the Bollingers to "book" their crops would be a violation of Farm Credit's policy. However, that is not enough to support the jury's verdict because a Farm Credit policy is not independently enforceable. It was not contained in any of the contracts or loan documents between the Bollingers and Farm Credit. Again, what is missing is a discussion of the evidence to support the jury's verdict on this point. If the interference is not improper, the tort has not occurred, even if the victim is harmed. See Mason v. Wal-Mart Stores, Inc. , 333 Ark. 3, 969 S.W.2d 160 (1998).
Arkansas law recognizes justification as a defense to a claim of tortious interference. See Walt Bennett Ford, Inc., supra. Farm Credit denies that it conditioned the extension of credit on the Bollingers "booking" their 2007 crops. Assuming, as we must in light of the jury's verdict, that Farm Credit did impose such a requirement, that does not make it "improper" as would support a verdict for tortious interference. Farm Credit had its own valid, economic interest to protect. Protecting one's economic interest constitutes justification for interference with a business expectancy unless one employs improper means to protect that interest. See Kinco, Inc. v. Schueck Steel, Inc. , 283 Ark. 72, 78, 671 S.W.2d 178, 181-82 (1984) (quoting Restatement (Second) of Torts § 768 (1977) ). So long as a defendant does not employ improper means, a defendant's own economic interest provides sufficient justification for an alleged tortious interference. West Memphis Adolescent Residential, LLC v. Compton , 2010 Ark. App. 450, 374 S.W.3d 922.
Also under this claim, the Bollingers argue that the circuit court erred in granting a directed verdict in favor of Farm Credit on their claim of negligence arising out of Farm Credit's requirement that they book their 2007 and 2008 crops. However, the Bollingers' assertion on this point is made without a developed argument and without a convincing explanation as to how or why a legal error occurred. It is the appellant's burden to demonstrate reversible error. Parker v. Parker , 97 Ark. App. 298, 248 S.W.3d 523 (2007). Points asserted without citation to authority or convincing argument should not be considered. Id.
The Bollingers next argue that the circuit court erred in directing a verdict for Farm Credit on their breach-of-fiduciary-duty claim arising from the requirement that they "book" their crops. We disagree.
Ordinarily, the relationship between a bank and its customer is one of debtor and creditor. Mans v. Peoples Bank , 340 Ark. 518, 10 S.W.3d 885 (2000). For a fiduciary relationship to exist, our supreme court has emphasized the necessity *174 of factual underpinnings to establish a relationship of trust between a bank and its customers. Id. at 526, 10 S.W.3d at 889. In their amended counterclaim, the Bollingers assert that the fiduciary relationship between them and Farm Credit resulted from Farm Credit being their lender over a period of years. A customer asserting a fiduciary relationship with his bank has the burden of proving the relationship is beyond that of debtor-creditor. Marsh v. Nat'l Bank of Commerce , 37 Ark. App. 41, 822 S.W.2d 404 (1992).
The Bollingers have not shown anything more than an ordinary debtor-creditor relationship between them and Farm Credit. The mere fact that there is a long-term relationship, without more, is insufficient to establish a fiduciary relationship. Mans , supra. There has been no showing that Farm Credit has been "intimately involved" with the Bollingers' operations so as to elevate the relationship to a "special relationship" for which fiduciary duties are owed. Thus, the circuit court correctly directed a verdict on this count of the Bollingers' counterclaim.
Because the Bollingers failed to prove two of the elements of the cause of action for tortious interference-that there was a termination or breach of their relationship with Riceland and that Farm Credit used improper means to achieve that result-the circuit court erred when it failed to grant Farm Credit's motion for a directed verdict on this claim.
B. The 2008 Soybean Crop
For the 2008 crop season, Farm Credit loaned the Bollingers only enough money for their wheat crop and for their land rent for the entire crop year cycle. The loans did not include moneys for their soybean crop. In fact, Farm Credit took the position that it would look at the situation again in June or July to determine whether to extend credit for the soybean crop. The Bollingers sought financing for its 2008 soybean crop from another agricultural lender, Home Oil Company, and its lending arm, AgQuest (collectively, Home Oil). Fred Bollinger, Jr., testified that he obtained a $100,000 line of credit from Home Oil in October 2007. He further testified that in an effort to obtain alternative financing, he asked Farm Credit to write a letter to Home Oil, stating that Farm Credit was not claiming a lien or security interest in the Bollingers' 2008 soybean crop. The letter, dated February 14, 2008, states in pertinent part:
This letter is to notify Home Oil Company that Farm Credit Midsouth, ACA [sic], has no security interest or crop lien against the 2008 soybean crop for all entities related to Fred Bollinger, Jr. (including Fred Bollinger Jr., Individually, Bollinger Lone Oak, Inc., Bollinger Partners, Inc., or FNB Farms).
Home Oil eventually loaned the Bollingers $300,000 in July 2008. However, Fred Bollinger, Jr., testified that the loan was not related to the February 2008 letter. The loan was not secured by a lien on the soybean cop. Instead, the loan was guaranteed by William Tennison. Farm Credit later asserted a lien on the soybean crop, and Riceland made the proceeds, approximately $411,000, jointly payable to Farm Credit and the Bollingers. The Bollingers endorsed the proceeds over to Farm Credit, who applied them to the balance of the Bollingers' notes and loans.
The Bollingers' claim for recovery of the 2008 soybean proceeds fails on multiple bases. First, the Bollingers are getting a double recovery. The Bollingers received approximately $411,000 for their 2008 soybean crop. Farm Credit applied those proceeds to reduce the balance due on the Bollingers' loans. Thus, they have received the benefit of those proceeds *175 when Farm Credit applied those same proceeds to reduce the loan balance. For the Bollingers to then recover a judgment for those same proceeds amounts to a prohibited double recovery. Fisher Trucking, Inc. v. Fleet Lease, Inc. , 304 Ark. 451, 803 S.W.2d 888 (1991).
Second, the Bollingers' promissory-estoppel and deceit claims also fail because the promise-made in the February 2008 letter-induced no reliance or action by anyone. Home Oil did not assert its own lien on the proceeds of the crop. The law on promissory estoppel is set out in the Restatement (Second) of Contracts:
A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.
Restatement (Second) of Contracts § 90 (1981) ; see also K.C. Props. of N.W. Ark., Inc. v. Lowell Inv. Partners, LLC , 373 Ark. 14, 280 S.W.3d 1 (2008) ; Rigsby v. Rigsby , 356 Ark. 311, 149 S.W.3d 318 (2004).
As noted above, Fred Bollinger, Jr., testified that the July 2008 loan from Home Oil was not related to Farm Credit's February 2008 letter to Home Oil. Likewise, a claim of fraud or deceit also includes a reliance element. Tyson Foods, Inc. v. Davis , 347 Ark. 566, 66 S.W.3d 568 (2002).
Because the claim fails, we also reverse the circuit court's award of prejudgment interest to the Bollingers arising from this claim.
C. The Crop-Insurance Claims
Farm Credit also argues that there is no substantial evidence to support the jury's verdicts for negligence, breach of fiduciary duty, and promissory estoppel concerning the Bollingers' crop-insurance claims. The Bollingers contend that Farm Credit mishandled their claim so that they did not recover all of the proceeds they were due.
One of the Bollingers' claims centered on Farm 2311. For the 2007 crop year, the Bollingers reported to Charlene Zachary of Farm Credit that they had planted fifteen acres on Farm 2311. Zachary, in turn, relayed this information to the insurance company, Rain and Hail. Rain and Hail then issued a summary of coverage to both Farm Credit and the Bollingers. The 2007 summary of coverage, however, listed Farm 2311 as having only eight planted acres. The Bollingers did not notice or object to the acreage reduction. In obtaining their 2008 crop insurance, the Bollingers reported their 2007 production to Zachary, who relayed the information to Rain and Hail. The Bollingers reported their production for Farm 2311 as 534.14 bushels, which, when divided by eight acres rather than fifteen acres, resulted in an abnormally high yield of 67 bushels per acre. Fred Bollinger, Jr., testified that when he received a letter from Rain and Hail inquiring about possible excessive yields and requesting documentation, he spoke with Zachary and she said that she would handle it. He asked that she look at the documentation to determine the acreage he reported because he did not report eight acres for Farm 2311. Instead, he reported fifteen acres. Zachary testified that the Bollingers had correctly reported that they had planted fifteen acres. She said that she did not call Rain and Hail to discuss the discrepancy when she received the letter questioning the excessive yield. She said that Mr. Bollinger had told her that he had taken care of the situation.
*176 Zachary said that Rain and Hail probably resolved the issue by combining the Bollingers' separate farms into basic units. She also said that the Bollingers had paid to have their farms insured separately instead of having them combined into basic units.
Farm Credit argues that it did not owe any duty to the Bollingers and cites the common-law rule that a policyholder has a duty to educate himself concerning matters of insurance, including the coverage available under different policies, and that an insurance agent generally has no duty to advise or inform policyholders as to different coverages. Buelow v. Madlock , 90 Ark. App. 466, 206 S.W.3d 890 (2005) (citing Scott-Huff Ins. Agency v.Sandusky , 318 Ark. 613, 887 S.W.2d 516 (1994) ; Howell v. Bullock , 297 Ark. 552, 764 S.W.2d 422 (1989) ; Stokes v. Harrell , 289 Ark. 179, 711 S.W.2d 755 (1986) ). However, if a special relationship exists between the insured and his insurance agent, this may place on the agent a higher duty to inform the insured. Id. The existence of a special relationship presents a question of fact. Id.
Based on these principles, Farm Credit argues that the promissory-estoppel claim cannot stand because it owed no duty to the Bollingers to advise about coverages. However, these claims are not about coverages per se; instead, they concern whether Farm Credit was negligent in helping the Bollingers in resolving the excessive-yield matter with Rain and Hail. Although Farm Credit may not have owed the Bollingers a duty, the jury may have found that it had assumed a duty when Charlene Zachary told Fred Bollinger, Jr., that she would handle it. A party who gratuitously undertakes a duty can be liable for negligently performing that duty. Mercy Health Sys. of Nw. Ark. v. McGraw , 2013 Ark. App. 459, 429 S.W.3d 298. In that case, a hospital doctor, upon being served with a summons and complaint in a malpractice action, entrusted it to employees of the hospital who assured her that it would be answered. However, when no answer was timely filed, a default judgment for $500,000 was entered against the doctor. The doctor's subsequent promissory-estoppel claim against the hospital for failing to keep its specific promise "to take care of the complaint" was tried to a jury, which awarded the doctor $350,000 after the verdict was reduced by the doctor's fault. We affirmed and held that the hospital employees' promise to the doctor to "take care of" the malpractice complaint was specific enough to be relied on by the doctor as an element of her promissory-estoppel claim against the hospital.
Here, the evidence was such that the issue of whether Zachary said that she would handle the excessive-yield matter and, if so, whether she was negligent in doing so, presented a jury question.
D. Other Issues
There are some loose ends on both direct appeal and on cross-appeal that do not fit into the discussion of the other issues. They are discussed here.
First, Farm Credit concedes that in light of the supreme court's recent decision abolishing the clean-up doctrine in Tilley v. Malvern National Bank , 2017 Ark. 343, 532 S.W.3d 570, the circuit court did not err in submitting the Bollingers' counterclaim to a jury.
Next, the Bollingers argue that the circuit court erred in directing a verdict for Farm Credit on their claim for reduced crop yields for their 2008 crop. Farm Credit moved for a directed verdict on this claim on the basis that the Bollingers did not provide proper evidence of their damages. In its motion, Farm Credit *177 asserted that the Bollingers simply provided county-wide figures for average yield per acre for the prior years without comparison of the yield for the damaged field and the yield for an adjacent, undamaged field growing the same crop during the same season. There was discussion between the court and counsel for the Bollingers over the proper measure of damages. Counsel for the Bollingers indicated that he had used county-wide average yields. The court denied the motion at the conclusion of the Bollingers' case-in-chief but indicated that it was likely to grant the motion at the conclusion of all of the evidence. There was further discussion of the measure of damages and the Bollingers' proof at the close of all of the evidence. This discussion included both the reduced-yield claim and the claim for the acreage not planted. The court eventually granted the motion as to both claims.
Arkansas law provides that when a crop is damaged but nonetheless grows to maturity, the damages are the difference between the market value, at the time of harvest, of the crop actually produced and the crop that would have been produced without the damage, less the costs of production. McGraw v. Weeks , 326 Ark. 285, 930 S.W.2d 365 (1996) ; McCorkle Farms, Inc. v. Thompson , 79 Ark. App. 150, 84 S.W.3d 884 (2002). Evidence as to the average yield per acre for the prior years is not reliable in computing damages in light of weather conditions and other factors that vary annually. McCorkle Farms , 79 Ark. App. at 164, 84 S.W.3d at 892 (citing J.L. Wilson Farms, Inc. v. Wallace , 267 Ark. 643, 590 S.W.2d 42 (Ark. App. 1979) ). However, "a comparison between the yield from the damaged land and the yield from adjacent but undamaged land during the same season, for the same crop, [is] substantial evidence to support an award of damages." Id.
The Bollingers contend that they submitted proof regarding the proper measure of damages through the testimony of Fred Bollinger, Jr., and an exhibit he prepared. In his testimony, Bollinger gave an average yield for his total acreage farmed at the booked price of $8.85 per acre. He also testified as to the cost of production. He did not attempt to break the figures down as to how many acres had reduced yields as opposed to yields for his undamaged lands. Nor is there any evidence as to yields from adjacent, undamaged farms and how their yields compared to the Bollingers' yields. Without the showing of comparability, the circuit court properly granted the motion for directed verdict on this claim. McCorkle Farms, supra.
The Bollingers also invite this court to adopt a measure of damages allowing recovery based on evidence of prior years' yields. This we cannot do. We are without authority to overrule our supreme court's precedent. See, e.g. , Selrahc Ltd. P'ship v. Seeco Inc. , 2009 Ark. App. 865, 374 S.W.3d 33 ; Roark v. State , 46 Ark. App. 49, 876 S.W.2d 596 (1994) ; Leach v. State , 38 Ark. App. 117, 831 S.W.2d 615 (1992).
Another element of damages the Bollingers sought to recover was the value of their unplanted 2008 soybean crop. The circuit court granted a directed a verdict on this claim as part of a discussion that also included the Bollingers' reduced-yield claim. The circuit court and the parties agreed that the correct measure of damages was the fair rental value of the land. Gregory v. Walker , 239 Ark. 415, 389 S.W.2d 892 (1965) ; Farm Bureau Lumber Corp. v. McMillan , 211 Ark. 951, 203 S.W.2d 398 (1947) ; St. Louis, Iron Mtn. & S. Ry. v. Saunders , 85 Ark. 111, 107 S.W. 194 (1908).
*178 The Bollingers contend that they submitted proof regarding the rental value of the relevant land. We disagree. Fred Bollinger, Jr., testified that his loan from Farm Credit included enough money to cover the rental of the land. The Bollingers also cite part of the Bollingers' 2008 credit presentation prepared by Farm Credit, as setting forth the relevant rental figures. However, no such rental information appears in that document. Instead, that document breaks down the Bollingers' already-incurred costs per acre, as well as how much additional money per acre will be necessary to "make" or "finish" their wheat crop. There was no loan for the soybean crop at that time, and the document notes that Farm Credit would reevaluate in June or July for funding of the soybean crop. Therefore, the circuit court did not err in granting a directed verdict on this claim.
Finally, the Bollingers argue that the circuit court erred in granting summary judgment in favor of Farm Credit on the Bollingers' claim for booking penalties imposed but never collected or sued for by Riceland.
This issue arose as follows. By "booking" their 2007 crops, the Bollingers obligated themselves to sell certain quantities of grain to Riceland at a future date but then were unable to deliver those quantities of grain within the timeframe required. As a result, the Bollingers alleged that they incurred booking penalties in excess of $300,000.
Farm Credit filed a motion for partial summary judgment on this claim, arguing that because the statute of limitations had run without Riceland having collected the booking penalties, they were not a proper element of the Bollingers' damages. The motion also sought to exclude evidence of the penalties from the jury. In their response to the motion, the Bollingers admitted that Riceland had not filed suit to collect the penalties. In their supporting brief, they also argued that excluding evidence of the penalties violated the collateral-source rule. After a hearing, the circuit court granted the motion for summary judgment.
The burden of proving damages rests on the party claiming them. Minerva Enters., Inc. v. Howlett , 308 Ark. 291, 824 S.W.2d 377 (1992.) The Bollingers argue that Farm Credit never presented proof in support of its motion for partial summary judgment. However, there is no such requirement. Rule 56 does not require the moving party to present affidavits. Instead, it expressly dispenses with that requirement, stating that "a party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment" and "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought" may move for summary judgment "with or without supporting affidavits. " Ark. R. Civ. P. 56 (a), (b) (emphasis added). In any event, Farm Credit did provide proof to support its motion by citing the deposition testimony of Fred Bollinger, Jr., to the effect that the penalties had not been paid and that Riceland was not going to collect them. Moreover, the Bollingers admitted that they had not paid the penalties, that Riceland never filed suit to collect the penalties, and that the statute of limitations had run. Under these circumstances, the Bollingers cannot prove one of the elements of their claim to recover the booking penalties-namely, that they suffered damages. When a party cannot present proof on an essential element of his or her claim, there is no remaining genuine issue of material fact, and the party moving for a summary judgment is entitled to judgment as a matter of law.
*179 First United Methodist Church of Ozark v. Harness Roofing, Inc. , 2015 Ark. App. 611, 474 S.W.3d 892. Therefore, the circuit court correctly granted summary judgment in favor of Farm Credit on the Bollingers' claim for the booking penalties.
VI. Conclusion
In conclusion, we affirm the circuit court's decision to have the Bollingers' counterclaim presented to a jury because the clean-up doctrine has been abolished. We also affirm the jury's verdict on Farm Credit's handling of the Bollingers' crop-insurance claims. Because the Bollingers failed to make a prima facie case of tortious interference, we reverse the jury's verdict and dismiss that claim. We likewise reverse and dismiss the Bollingers' claim for the proceeds from their 2008 soybean crop. The judgments in the Bollingers' favor for deceit and promissory estoppel cannot stand because there was no reliance on Farm Credit's February 2008 letter to Home Oil Company. We also affirm on all points of the Bollingers' cross-appeal.
Affirmed in part and reversed in part on direct appeal; affirmed on cross-appeal.
Gladwin and Vaught, JJ., agree.

Farm Credit originally named Fred Bollinger, Sr.; his wife, Syble Bollinger; and Fred Bollinger, Jr.'s wife, Betty Bollinger as defendants. Syble Bollinger died during the pendency of this action in the lower court and Fred Bollinger, Sr., was appointed personal representative. Also, Betty Bollinger filed for bankruptcy protection during the pendency of the case. Farm Credit was granted summary judgment on the counterclaim filed by Betty Bollinger.

As explained below, there were multiple theories for each claim.

Navorro-Monzo involved an existing contractual relationship between the parties.